**Affirmed and Opinion Filed November 24, 2020**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-19-00636-CV**

**EYM DINER L.P. D/B/A DENNY'S AND AIR CONDITIONING CONTROL
SERVICE COMPANY, Appellants**

**V.**

**KHALED YOUSEF, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-00546**

## MEMORANDUM OPINION

Before Justices Partida-Kipness[1] and Nowell
Opinion by Justice Partida-Kipness

This case arises from injuries appellee Khaled Yousef sustained performing

work for his then-employer, Air Conditioning Control Service Company (ACCSC),

at a Denny's restaurant in Denton, Texas. A jury awarded Yousef $337,131.24 in

damages. EYM Diner L.P. d/b/a Denny's (EYM) and ACCSC appeal from the

resulting adverse judgment. In multiple issues, EYM and ACCSC challenge the

factual sufficiency of the evidence to support the jury's findings that Yousef was not

---

[1] The Honorable David Bridges, Justice, participated in the submission of this case. However, he did
not participate in the issuance of this opinion due to his death on July 25, 2020.

negligent and EYM was negligent, allege various charge errors, complain of the denial of their motions for new trial, and contend cumulative error entitles them to a new trial. After reviewing the record, we affirm the trial court's judgment.

## BACKGROUND

Appellee Khaled Yousef grew up in Jordan. Prior to immigrating to the United States in 2008, he completed high school and received an electrical certification from a three-year institute in Jordan. ACCSC, an HVAC company in North Texas, hired Yousef in 2012 as a helper. Marwan Abdo owned ACCSC at that time. On May 25, 2017, Yousef was on a job for ACCSC at a Denny's restaurant in Denton, Texas, when the cover to a breaker panel he was attempting to remove fell and severed part of his finger. EYM owned the restaurant and had hired ACCSC to repair the restaurant's main air conditioning unit by replacing an air compressor and disconnect box. In the underlying proceeding, Yousef sued EYM and ACCSC for damages resulting from his injuries. The following provides context for an understanding of the issues presented on appeal.

## I. Yousef's Employment at ACCSC

When he first began working for ACCSC, Yousef assisted ACCSC technicians with their on-site repair and maintenance work. Yousef worked predominantly with Mulky Othman and Abdo. They taught Yousef how to do the job of an HVAC technician, starting with electric wiring and then repair,

maintenance, and changing parts of air conditioning units. Yousef eventually became a technician for ACCSC.

Yousef considered Othman his boss when they were on a jobsite together. However, when he was on a job with Othman, Yousef would take the lead as the electrical servicer, and Othman typically took the lead as the air conditioning servicer. According to Othman, Yousef was an electrical technician and Othman was the air conditioning technician, so who acted as team leader on a job depended on the work each was doing at the time. Abdo also testified that the majority of Yousef's work was in electrical even though Yousef had also been trained on the refrigeration side of the business.

## II.     The Denny's Job

EYM owns and operates several Denny's restaurants in North Texas. In May 2017, EYM hired ACCSC to repair the main air conditioning unit at a Denny's location in Denton, Texas. One of the restaurant's two compressors needed to be replaced. The work was scheduled to take place on May 25, 2017. Abdo sent Yousef to the restaurant the day before to check the work site and confirm what work needed to be completed. Yousef found that the disconnect switch was also defective, so ACCSC suggested that EYM replace that too. EYM agreed and provided the new compressor and the new disconnect switch. ACCSC obtained a crane to move the new compressor to the roof for installation.

Yousef, Othman, and Hussein Edduweh were the ACCSC employees on the job site at the restaurant on May 25, 2017. Yousef testified that he and Edduweh met at Abdo's shop that morning before driving to Denton. Yousef coordinated with the crane operator and had the new compressor placed on the roof. After Othman arrived at the work site, he met with Yousef and Edduweh to discuss how to complete the job.

The air conditioning unit and disconnect box were on the roof. To complete the work, they needed to turn off the power to the disconnect switch. Yousef went downstairs to the electrical room to look at the breaker box and locate the breaker connected to the disconnect switch. When he opened the door to the breaker box, he saw six breakers, none of which were labeled as to what equipment each breaker controlled. The door and breakers are shown here in Yousef's trial exhibit 16-C.



Abdo explained at trial that each breaker provides power to a subpanel, and each subpanel has several units attached, such as refrigeration or computers. One of the breakers provided power for the air conditioning unit they were working on the day of the accident. Because the breakers were not labeled, Yousef could not tell which breaker provided power to the disconnect switch they were replacing. Abdo testified that the prior owner of the Denton Denny's restaurant, Continental Foods, warned him not to disconnect the

power to sensitive equipment like refrigeration and computers because that would disturb the restaurant's work and customer service during business hours. Yousef understood that it was Abdo's rule that ACCSC technicians were not permitted to turn the main breaker off at job sites.

Yousef and Abdo testified that because the breakers were not labeled, the only way to determine which breaker controlled power to the disconnect switch without switching off one breaker at a time and risk turning off power to the restaurant was to use an amp meter. That, however, would require someone to remove the cover of the breaker box to expose the cables so that the amp meter could be placed on the cable to read the amps coming from the line. When Yousef saw the breaker box was not labeled, he called Othman to find out what to do. Othman went to the electrical room and called Abdo on the phone. Abdo and Othman discussed the panel and how to proceed. Yousef overheard Othman's phone conversation with Abdo but did not participate in the call. According to Yousef, after the call ended, Othman "instructed me to open the box" because Abdo had instructed Othman to have Othman and Yousef open the breaker box. Yousef recalled that Othman related to him that Othman and Abdo decided that Othman and Yousef needed to open the breaker box and locate the correct breaker by putting a clamp meter on the wire and finding which breakers go to which units. Othman instructed Yousef to "Take the cover and I will go upstairs, and you – and you find the breaker and turn it off and I'll go upstairs and I'll be sure of that." Yousef testified that the plan was for Othman to use the

tester upstairs on the roof to test whether the breaker Yousef turned off downstairs was the correct one. Othman and Yousef would talk on the phone during the testing process.

Othman testified that he and Yousef discussed needing to take the breaker panel cover off, and he agreed that they would not have needed to take the panel off if the breakers had been labeled. Abdo testified, however, that he told Othman to instruct Yousef not to do any other work with the breaker box until Abdo arrived at the restaurant. This testimony conflicted with Abdo's testimony that he did not decide to drive to Denton until after Othman called Abdo and informed him that Yousef had been injured. Further, Othman testified that he did not remember if Abdo told him not to remove the panel cover until Abdo could get to the restaurant.

## III. The Accident

After getting his tools from his van, Yousef set to work removing the breaker panel cover. As can be seen in the photos below, the panel cover was attached two to three feet from the ground and had eight visible screws attaching it to the inside of the breaker box. The panel cover weighed sixty-nine pounds.





ACCSC Ex. 4
Breaker panel cover attached
to breaker box

ACCSC Ex. 11
Inside of breaker panel cover
detached from breaker box

Yousef testified that, using his left hand, he unscrewed the first screw to the left of the panel. Then, after unscrewing one or two additional screws, the panel cover fell, and his right hand landed underneath the panel. He told the jury he was not sure how his right hand ended underneath the panel because that hand was holding the box while he loosened the screws with his left hand. He testified that he did not have his right hand under the panel cover while he was loosening the screws. Yousef was wearing gloves, but the panel cover cut his gloves and his hand. The accident severed part of his finger. After the panel cover fell on him, Yousef went outside, found Othman, and told him to call an ambulance because his finger had been cut off. Yousef described the injury as "unbelievably painful."

Othman asked the Denny's manager to call 911, and Edduweh looked for and found the severed portion of Yousef's finger. He gave the finger to the first responders and went with Yousef in the ambulance to the hospital. Abdo arrived at the restaurant about two hours after the accident and went to the electrical room. He testified that his main goal was to close the breaker box. Abdo's first attempt to put the panel cover back on the breaker box failed because the cover fell right down. He was ultimately able to reattach the cover to the breaker box. Abdo then went to the hospital and saw Yousef in the emergency room.

Yousef's doctor eventually cleared him to return work. He did not, however, return to work at ACCSC.

## IV.     The Trial

Yousef sued EYM and ACCSC, and the case proceeded to trial. Yousef presented Abdo, Othman, Yousef, and Edduweh as fact witnesses. He also presented Frank Telschow, a former EYM employee, by deposition. Telschow testified in pertinent part that the first time he removed the breaker panel cover it fell on him and, if he had not been wearing steel-toe boots, the panel cover would have cut off his toes when it fell. Telschow also testified that he had last removed the breaker panel cover two months before the accident. When he put the panel cover back on at that time, he was able to secure only five of the six screws on the sides of the panel cover because the top right screw was not functional and was not connected to the breaker panel box. Telschow also claimed he warned Abdo and one of the ACCSC

workers, but not Yousef, about the breaker panel cover on the day of the accident and told them they did not need to take the panel cover off to find the breaker connected to the disconnect switch. According to Telschow, three of the breakers were labeled "A", "B", and "C", and the other three had no markings. The unmarked breakers went to the roof, so turning those breakers off posed no risk of turning power off to the interior of the restaurant.

Abdo, Yousef, Othman, and Edduweh each denied speaking with Telschow about the breaker box that injured Yousef. Othman further testified that he did not speak to Telschow the morning of the accident and no one from Denny's told him to watch out for the breaker panel or warned him to be careful when taking the panel cover off. Edduweh also stated he did not recall anyone from Denny's telling him about the breaker cover.

Yousef also presented the expert testimony of James Thomas Knorpp, a safety engineer. Knorpp testified that, in his expert opinion, EYM controlled the breaker panel, had the duty to maintain the panel and cover, and violated various Occupational Safety and Health Administration (OSHA) regulations, the National Electronics Code, and general industry regulations related to EYM's maintenance of the breaker panel and cover. The violations included failing to mark the breakers to show the purpose of the breakers and what equipment they controlled, posting no warnings as to the hazard of the electrical panel and the condition of the cover, failing to repair the screws that were not adequately holding the brackets in place

against the metal to keep the cover in place, leaving one of the side brackets non-functional, and failing to maintain the cover in a secure condition. Further, EYM had the responsibility to ensure the condition of the equipment contractors such as ACCSC and Yousef worked on was safe. Knorpp also told the jury that ACCSC would have no responsibility for the maintenance that had been performed to date on the breaker box "unless they performed it at some earlier time." However, per OSHA regulations, ACCSC, as Yousef's employer, had the right to control Yousef's work. Knorpp conceded that an employee has the responsibility to look at what he is doing and see if it looks safe to him before proceeding. However, he noted that the employee "can't control the conditions of the equipment as it has been worked on previously and left" and can only look at something to make sure that it is, in his opinion, safe "to his ability to recognize it."

Yousef agreed he is responsible for his own safety if he feels something is unsafe. He also testified, however, that he had no idea any screws were loose or clamps were unfastened on the panel cover when he began removing it. Yousef maintained no gap between the cover and the box was visible to him before the accident.

EYM's evidence consisted of the testimony of its Facilities Manager, Larry Howard Wilson, and two expert witnesses, Roger Brian Tate and Sandra Lynn Whitaker. Wilson testified that he spoke with Abdo the morning of the accident by phone about replacing the disconnect switch. According to Wilson, Abdo conveyed

–10–

a concern that a lack of markings on the breakers could pose a problem with replacing the disconnect switch. Wilson told Abdo if the breakers were not marked, he should just shut one breaker off at a time until he found the right breaker. Wilson did not witness the accident and the record does not show he was on site the day of the accident. Wilson did take part in the on-site inspection of the breaker box and panel cover related to Yousef's lawsuit, along with the parties' experts and attorneys. During that inspection, Wilson removed the breaker panel cover for inspection. At trial, he explained how he removed the cover and gave his opinions concerning what the panel cover would have looked like on the day of the accident and how Yousef's right hand ended up below the panel cover. Wilson suggested Yousef put his hand under the panel cover to try to lift it up and out because the side hooks were still engaged, causing the panel cover to become stuck. Wilson also stated that if the top right clamp was undone when Yousef arrived, there would have been a noticeable quarter-inch gap between the panel and the cover. And, if additional clamps were undone, Yousef would have seen "a gap all the way around until you get to a screw that has been tightened down."

Tate, a forensic, mechanical, and fire protection engineer, inspected the panel cover and breaker box with the other experts and attorneys. It is Tate's opinion that the accident was caused by Yousef pulling and lifting the panel cover off of the bottom tabs of the breaker box and then being surprised by the weight of the panel and dropping the cover as a result. Tate questioned the veracity of Yousef's

contention that he had only unscrewed between one and three of the screws when the cover fell. According to Tate, that was not possible because of how the panel cover was engineered.

EYM's final expert, Sandra Lynn Whitaker, described herself as a safety professional who evaluates issues surrounding OSHA regulations and how they may apply or not apply at any given accident scene. EYM relies on Whitaker's testimony to support its factual sufficiency arguments on appeal. In her opinion, Yousef was the actual cause of his injury because he was not qualified or authorized under OSHA regulations or Texas law to remove the breaker panel cover.

ACCSC's case in chief consisted solely of further testimony from Abdo. He testified that he did not talk to Wilson or Telschow the day of the accident. He also maintained that he told Othman on the phone to concentrate on replacing the compressor unit and they would take care of the disconnect switch when Abdo got to the restaurant.

The jury returned a unanimous verdict for Yousef. The jury answered four questions. In Questions 1 and 2, the jury found that EYM's negligence was a proximate cause of the occurrence, Yousef was not negligent, and apportioned 0% of the responsibility for the occurrence to Yousef and 100% to EYM. In Question 3, the jury found that ACCSC was negligent and ACCSC's negligence proximately caused the occurrence in question. Finally, in Question 4, the jury found $337,131.24 in past and future damages.

Following trial, Yousef filed a motion to enter judgment on the verdict, and the trial court signed a final judgment on May 9, 2019. The final judgment rendered judgment on the verdict and ordered EYM and ACCSC jointly and severally liable to Yousef for the damages awarded in the judgment as well as prejudgment interest, post-judgment interest, and costs. EYM and ACCSC filed a joint motion for new trial, which was denied. This appeal followed.

## ANALYSIS

In separate briefs, EYM and ACCSC raise multiple appellate issues, some of which overlap. Their appellate issues fall into four categories: factual sufficiency of the evidence to support certain jury findings, charge error, denial of their joint motion for new trial, and cumulative error. We will address their respective appellate issues by category below.

### I. Factual Sufficiency

In a factual sufficiency review, appellate courts must examine the evidence that both supports and contradicts the jury's verdict in a neutral light. *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 408–09 (Tex. App.—Dallas 2014, no pet.) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam)). In making this review, however, we are not a fact finder. The fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We, therefore, defer to the jury's implicit determinations of credibility and the weight to be given to the

evidence. *Wise*, 436 S.W.3d at 408–09. Further, we may not substitute our own judgment for that of the fact finder merely because we might reach a different result. *Bright v. Addison*, 171 S.W.3d 588, 595–96 (Tex. App.—Dallas 2005, pet. denied).

In the context of a jury trial, the sufficiency of the evidence is reviewed in the light of the charge submitted if no objection is made to the charge. *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001). "If the evidence at trial 'would enable reasonable and fair-minded people to differ in their conclusions,' we will not substitute our judgment for that of the fact finder." *Atkinson v. Sunchase IV Homeowners Ass'n, Inc.*, No. 13-17-00691-CV, 2020 WL 2079093, at *3 (Tex. App.—Corpus Christi–Edinburg Apr. 30, 2020, pet. filed) (mem. op.) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Bright*, 171 S.W.3d at 595–96; *Barnett v. Coppell N. Tex. Court, Ltd.*, 123 S.W.3d 804, 813–14 (Tex. App.—Dallas 2003, pet. denied).

"Factual sufficiency points of error are designated as 'insufficient evidence points' or 'great weight and preponderance points', depending upon whether the complaining party had the burden of proof." *Raw Hide Oil & Gas, Inc. v. Maxus Expl. Co.*, 766 S.W.2d 264, 275 (Tex. App.—Amarillo 1988, writ denied). Both types are asserted in this appeal. At issue here is the factual sufficiency of the evidence to support the jury's answers to Question Numbers 1 and 2—the jury's

determinations that Yousef was not negligent and EYM bore 100% of the responsibility for the occurrence. As such, EYM and ACCSC assert a "great weight and preponderance point" as to the findings that Yousef was not negligent, and EYM asserts an "insufficient evidence point" as to the findings that EYM was negligent and bore 100% responsibility for the occurrence.

When a party attacks the factual sufficiency of the evidence to support a finding on an issue as to which it had the burden of proof, it must show that the adverse finding is against the great weight and preponderance of the evidence. *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 722 (Tex. App.—Dallas 2011, pet. denied). "A finding is against the great weight and preponderance of the evidence if it is clearly wrong, manifestly unjust, or 'shocks the conscience.'" *Wal-Mart Stores Tex., LLC v. Bishop*, 553 S.W.3d 648, 663 (Tex. App.—Dallas 2018, pet. granted, judgm't modified w.r.m.) (quoting *Golden Eagle Archery*, 116 S.W.3d at 761).

When an appellant challenges the factual sufficiency of the evidence to support an adverse finding on an issue on which it did not have the burden of proof, the appellant must demonstrate that there is insufficient evidence to support the adverse finding. *Hoss v. Alardin*, 338 S.W.3d 635, 651 (Tex. App.—Dallas 2011, no pet.). The evidence is insufficient for factual sufficiency purposes if, after reviewing all the evidence in the record, we determine the evidence supporting the jury finding is so weak or the finding is so against the overwhelming weight of the evidence that

the finding is clearly wrong and unjust. *Weaver & Tidwell, L.L.P. v. Guarantee Co. of N. Am. USA*, 427 S.W.3d 559, 564–65 (Tex. App.—Dallas 2014, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)); *Hoss*, 338 S.W.3d at 651.

**A.     Findings that Yousef was not negligent and bore 0% responsibility**

Question Numbers 1 and 2 presented the general negligence and proportionate responsibility questions to the jury as between EYM and Yousef:

**QUESTION NO. 1**

Do you find from a preponderance of the evidence that the negligence, if any, of those named below proximately caused the occurrence in question?

Answer "Yes" or "No" for each of the following:

    a.    EYM Diner d/b/a Denny's      **Answer:** _Yes_

    b.    Khaled Yousef      **Answer:** _No_

**QUESTION NO. 2**

What percentage of the negligence that caused the occurrence do you find from a preponderance of the evidence to be attributable to each of those found by you, in your answer to Question No. 1, to have been negligent?

The percentages you find must total 100%. The negligence attributable to those named below is not necessarily measured by the number of acts or omissions found.

    a.    EYM Diner d/b/a Denny's      **Answer:** _100%_

    b.    Khaled Yousef      **Answer:** _0%_

**TOTAL:** _100%_

EYM and ACCSC complain that the jury's answers of "No" and "0%" as to Yousef in Question Numbers 1 and 2 are against the great weight and preponderance of the evidence. They contend those findings are clearly wrong and manifestly unjust because the evidence showed Yousef's negligence proximately caused the occurrence in question. EYM and ACCSC maintain on appeal that Yousef's negligence and proportionate responsibility were shown through two categories of evidence: (1) evidence that Yousef failed to use ordinary care to make sure the breaker panel box was safe for him to remove, and (2) expert testimony that Yousef was not qualified or authorized under federal or state law to enter the breaker box and remove the panel cover.

First, EYM and ACCSC argue the jury findings as to Yousef's negligence are against the great weight and preponderance of the evidence because the evidence showed that Yousef failed to use ordinary care to make sure the breaker panel box was safe for him to remove. Specifically, EYM and ACCSC contend Yousef's own testimony showed he did not inspect the panel cover and failed to pay attention to any gaps between the cover and the box before he attempted to remove the cover. EYM and ACCSC also rely on Abdo's testimony that he told Yousef not to remove the panel cover until Abdo arrived on site. Further, EYM and ACCSC maintain that Yousef's decision to remove the panel cover and go into the breaker box constitutes a failure to use ordinary care that proximately caused the occurrence because he was purportedly not authorized to do so by EYM, OSHA regulations, and Texas law.

–17–

To preserve a factual sufficiency challenge for appeal, a party must present the specific complaint to the trial court in a motion for new trial. TEX. R. CIV. P. 324(b)(2), (3); *In re A.R.M.*, 593 S.W.3d 358, 362 (Tex. App.—Dallas 2018, pet. denied); *Defterios v. Dallas Bayou Bend, Ltd.*, 350 S.W.3d 659, 664 (Tex. App.—Dallas 2011, pet. denied). To preserve error, the motion for new trial must state the factual sufficiency complaint with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See, e.g., Halim v. Ramchandani*, 203 S.W.3d 482, 487 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (motion for new trial did not preserve factual sufficiency complaint because arguments asserted on appeal were not asserted in new trial motion); *see also In re Commitment of Lopez*, 462 S.W.3d 106, 114 (Tex. App.—Beaumont 2015, pet. denied) ("An issue on appeal must comport with the objection made at trial; otherwise, the issue is not preserved for appellate review."); TEX. R. APP. P. 33.1(a). Here, EYM and ACCSC did not raise these arguments regarding a failure to use ordinary care in their joint motion for new trial. They are, therefore, not preserved for appellate review, and we do not address the merits of these arguments.[2]

---

[2] EYM and ACCSC mention two of the arguments raised on appeal—Yousef's testimony that he saw no problems with the panel cover and the allegation that Yousef ignored Abdo's instructions to wait to remove the panel until Abdo was present—in their "Joint Reply to Plaintiff's Response to Joint Motion for New Trial." Those arguments were not, however, included in the joint motion for new trial. The general inclusion of these arguments in a reply brief was insufficient to preserve these contentions for our review on appeal. *See Shipley v. Holt Tex., LTD*, No. 02-09-00122-CV, 2010 WL 1999016, at *2, n.4 (Tex. App.—Fort Worth May 20, 2010, no pet.) (mem. op.) (questioning witnesses at hearing on motion for new trial regarding issues not raised in motion for new trial insufficient to preserve issues for review); TEX. R. CIV. P. 324(b)(2) (requiring factual sufficiency of the evidence to support a jury finding to be raised in "a point

The factual sufficiency arguments EYM and ACCSC did raise in their joint motion for new trial and now assert on appeal center on the testimony of expert witness Sandra Lynn Whitaker. She testified at trial and through her expert report that Yousef was not qualified or authorized under OSHA regulations or Texas law to enter the breaker box, and he violated safety regulations by removing the panel cover because he was not a licensed electrician in the United States. Whitaker also testified that Yousef was not authorized in his role as an air conditioning technician to replace the disconnect switch because the Texas Occupations Code provides that a person may not perform electrical work unless the person holds the appropriate license. TEX. OCC. CODE § 1305.151. Air conditioning technicians are exempt from the licensing requirement, however, if the technician installs a disconnect switch where one had not been installed previously. 16 TEX. ADMIN CODE § 75.100(a)(2). According to Whitaker, Yousef was not exempt from the licensing requirement here because he was replacing a defective disconnect switch rather than installing a new disconnect switch where none had been before.

On appeal, EYM and ACCSC argue the jury "should have found some responsibility on Yousef based on" this evidence. We disagree. The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Golden*

---

in a motion for new trial"); *see also In re Commitment of Lopez*, 462 S.W.3d at 114 ("The objection Lopez raised at trial—that the State's argument appeals to the passions and prejudices of the jury—does not comport with his complaint on appeal that the State's argument essentially encouraged the jurors to violate the trial court's limiting instruction.").

*Eagle Archery*, 116 S.W.3d at 761. Moreover, it is within the province of the jury to weigh opinion evidence and the judgment of experts. *Banks v. Columbia Hosp. at Med. City Dallas Subsidiary, L.P.*, 233 S.W.3d 64, 67–68 (Tex. App.—Dallas 2007, pet. denied); *Pilkington v. Kornell*, 822 S.W.2d 223, 230 (Tex. App.—Dallas 1991, writ denied). "It is the jury's role 'to resolve conflicts and inconsistencies in the testimony of any one witness as well as in the testimony of different witnesses.'" *Dal–Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 141 (Tex. App.—Dallas 2006, no pet.) (quoting *Ford v. Panhandle & Santa Fe Ry. Co.*, 151 Tex. 538, 542, 252 S.W.2d 561, 563 (1952)). Here, the jury heard conflicting testimony from other witnesses, including the only witness to the accident, Yousef.

In contrast to Whitaker's testimony, Abdo testified he believed Yousef had the legal authority under Texas law to perform the work he was performing the day of the accident (i.e., to go into the electric panel to check the breaker). Yousef testified he had been in other breaker boxes in the past, including breaker boxes larger than the one at the Denny's location, removed other panel covers many times, and used a clamp meter to test the breakers inside other electrical panels. Further, there is no evidence that Yousef did not hold the necessary license or certification required under the regulations cited by Whitaker to replace the disconnect box or remove the panel cover. Her opinion that he was not qualified was based on assumptions only. Yousef, however, testified he obtained an electrical certification in his native country of Jordan after completing a three-year certification program.

Yousef also had nearly five years of work experience with Abdo's company that included electrical work as well as repair and maintenance on air conditioning equipment.

Moreover, appellants did not request a negligence per se instruction, and none was given to the jury. Indeed, Whitaker did not testify that Yousef acted negligently by allegedly violating those statutes and regulations or that such violations proximately caused Yousef's injury. Rather, her opinions as to Yousef's alleged violations were limited to her opinions that (1) nothing indicates he was qualified or authorized to remove the panel cover under OSHA regulations and Texas law, and (2) he violated OSHA regulations by removing the panel cover because, by doing so, he exposed himself to energized wiring and the risk of electrocution hazards and injury. Whitaker viewed the unsafe condition created by these alleged violations as "the actual removal of the panel cover which exposed the energized electrical wiring," not the allegedly negligent removal[3] of the panel cover that resulted in Yousef dropping the cover on his hand and severing his fingertip. Whitaker's testimony is, thus, insufficient to overturn the jury's findings that Yousef was not negligent here and held no responsibility for the occurrence in question.

---

[3] Whitaker also testified generally that Yousef was the actual cause of his injury because he "made the decision to remove the panel cover without the valid experience to know how to remove that cover and how to protect himself from that issue of the handling of that heavy cover." EYM and ACCSC, however, do not rely on that generalized opinion to support their factual sufficiency point on appeal.

Here, the only witness to the accident was Yousef. The jury heard from Yousef directly and was free to believe him. Even Abdo, who owned ACCSC and was an adverse witness in the case, corroborated Yousef's testimony regarding his skills and experience as an electrician and the belief that he was legally authorized to remove the panel cover. The jury also heard conflicting evidence as to the alleged negligence of Yousef in the removal of the panel cover. The conflicting evidence came from experts hired by the defendants, the defendants themselves, or witnesses affiliated with the defendants. The jury was free to believe one witness, disbelieve another, and resolve inconsistencies in the testimony. *See Dal–Chrome Co.*, 183 S.W.3d at 141. The jury chose to believe Yousef. Considering all of the evidence, we conclude the jury's findings on the issues of Yousef's negligence and proportionate responsibility are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Accordingly, we overrule EYM's first issue and ACCSC's third issue.

### B.    EYM's negligence in Question Numbers 1 and 2

In its second issue, EYM complains the evidence is factually insufficient to support the jury's findings that EYM's negligence proximately caused the occurrence, and EYM was 100% responsible for the occurrence. EYM did not raise these complaints in its motion for new trial. EYM, therefore, did not preserve the factual sufficiency point as to its own negligence and proportionate responsibility for appellate review. *See* TEX. R. CIV. P. 324(b)(2), (3); *see also In re A.R.M.*, 593

–22–

S.W.3d at 362; *Defterios*, 350 S.W.3d at 664. Accordingly, we overrule EYM's second issue.

## II.     Charge Error

EYM and ACCSC also contend the trial court erred in its submission of the case to the jury. First, they complain the trial court abused its discretion by denying their requests to include EYM, ACCSC, and Yousef in the proportionate responsibility question (Question Number 2). Next, ACCSC contends the jury charge contained improper instructions as to the meanings of "negligence" and "ordinary care" as they related to ACCSC. Finally, ACCSC argues the trial court abused its discretion by questioning the jury as to ACCSC's liability under a general negligence theory. As a preliminary matter, Yousef contends EYM and ACCSC waived these alleged charge errors by failing to object to the trial court's jury charge. We agree.

As part of their required pretrial filings, each party filed a proposed jury charge. EYM and ACCSC's proposed jury charges included the questions, instructions, and definitions they contend on appeal should have been included in the charge. EYM and ACCSC's pretrial proposed jury charges each included a proportionate responsibility question that asked the jury to determine the percentage of responsibility attributable to each person the jury found caused or contributed to cause the injury as between EYM, ACCSC, and Yousef. Similarly, ACCSC's proposed jury charge included the definitions of "negligence" and "ordinary care"

–23–

ACCSC now argues the court should have included in the charge, as well as the form of the liability question as to ACCSC's liability it maintains would have been proper here.

The charge conference consisted of the following comments by the trial judge and counsel:

> THE COURT: We are on the record.
>
> I have provided -- I have considered the Court -- the proposed charge from Plaintiff and both Defendants, and I have prepared and I'm going to submit the Court's charge which is different from both.
>
> To the extent that the Court's charge includes language which either Plaintiff or Defendant has not included in their proposed charge, the objection to the inclusion of same is overruled, the request to excise same is denied.
>
> To the extent that the Court's charge does not include language proffered by either Plaintiff or Defendants, the request -- the objection to said exclusion is denied, the request to include such language is refused.

The trial judge then asked EYM's counsel and ACCSC's counsel if they had "any other objections to the charge that has [sic] not been addressed by the Court?" EYM's counsel responded "No, Your Honor." ACCSC's counsel also responded "No, Your Honor." That was the extent of the charge conference.

EYM and ACCSC argue on appeal that the record of the charge conference shows they objected to the court's charge, presumably by submitting the pretrial proposed charges, and those "objections" were overruled. EYM further argues that it would have been "superfluous" to make objections after the trial judge stated he

–24–

had overruled objections and doing so "would have angered" or "displeased" the trial judge. Indeed, the trial judge appears to have validated counsel's fears at the hearing on appellants' joint motion for new trial by telling counsel that he believed making further objections following his statements at the charge conference would have been a "superfluous," ill-advised, and "hazardous" move by counsel. The following discussion took place at the new trial hearing regarding Yousef's argument that EYM and ACCSC waived their objections to the proportionate responsibility question by failing to object to the inclusion of ACCSC in that question:

> [YOUSEF'S COUNSEL]: And a 166 submission, it doesn't substitute the necessity requirement for them to object to the jury charge --
>
> THE COURT: Well, my --
>
> [YOUSEF'S COUNSEL]: -- during the charge conference.
>
> THE COURT: -- my recollection is that I instructed the lawyers that to the extent that the Court's charge did not include language that had been submitted as a part of the 166(a) submission, that the objection to not including that was overruled, did I not?
>
> [YOUSEF'S COUNSEL]: That is true, Your Honor. They still had an opportunity on the record or in writing to make that objection and they did not.
>
> THE COURT: But based on my statement then they -- they would have been just being superfluous and I would have said, "Counsel, I've already – I've already taken care of that." Isn't that right?
>
> I mean, as a practical matter --
>
> [YOUSEF'S COUNSEL]: I hesitate to concede that, Your Honor.
>
> THE COURT: Well, I -- Well, then, I'll push you a little bit further.

–25–

If I tell a party -- If I tell a lawyer that I've ruled on their objection --

If I tell you that I've ruled on your objection, you certainly would not -- and I overrule your objection, you certainly, as a prudent and effective practitioner in this Court, would not continue to urge that objection, would you? Of course you wouldn't.

[YOUSEF'S COUNSEL]: I wouldn't; however, Your Honor, to comply with Rule 273 I would ask you respectfully if I could elaborate on exactly which objection because --

THE COURT: And assuming that I tell you, "No, you may not; I've reviewed all of your objections and I'm overruling all of your objections," the next thing -- if you don't say, "Yes, sir", the next thing is, "Counsel, you need to be seated now. I've already ruled." Isn't that right?

[YOUSEF'S COUNSEL]: That is correct.

THE COURT: I mean, you're asking – you're asking Mr. Shaw to take the -- if not untenable, the hazardous position of arguing with me after I've made a ruling, something you certainly would not recommend co- counsel to do, right?

[YOUSEF'S COUNSEL]: I would not recommend that to my colleagues and associates. I would not recommend that, Your Honor, you are correct.

THE COURT: All right.

[YOUSEF'S COUNSEL]: It is hazardous to do that in your courtroom.

The trial judge in this case has a reputation for running a highly efficient courtroom in which he holds all parties to strict time limits for putting on their case. The record here shows this case was no exception. The truncated "charge conference" appears to be one way in which the trial judge moves cases along and gets cases to the jury quickly. While we applaud the trial judge's efficiency and respect for the jurors'

time, the use of a global denial of objections and requests based solely on the parties' pretrial submission of proposed jury charges does not preserve issues of charge error for appellate review. *See, e.g., Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 729–30 (Tex. App.—Dallas 2015, no pet.); *see also* TEX. R. CIV. P. 272, 273, 274. The reason is simple; a proposed jury charge filed pretrial *standing alone* does not meet the preservation of error requirements of rules 272, 273, and 274.

### A. Applicable law

To preserve error in the charge, the court must be informed of the error before the charge is formally submitted to the jury. *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 830 (Tex. 2012) (citing TEX. R. CIV. P. 272). "A charge filed before trial begins rarely accounts fully for the inevitable developments during trial. For these reasons, our procedural rules require that requests be prepared and presented to the court 'within a reasonable time *after* the charge is given to the parties or their attorneys for examination.'" *Id.* at 831 (quoting TEX. R. CIV. P. 273). "Although trial courts must prepare and deliver the charge, we cannot expect them to comb through the parties' pretrial filings to ensure that the resulting document comports precisely with their requests—that is the parties' responsibility." *Cruz*, 364 S.W.3d at 831. "The aggrieved party must show that the trial court was aware of the party's request and denied it." *Id.* at 830. The trial court's awareness "is the key." *Id.* at 831.

To that end, the rules require specificity when making objections and requests. Rule 274 provides, "A party objecting to a charge must point out distinctly the

–27–

objectionable matter and the grounds of the objection." TEX. R. CIV. P. 274. "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." *Id.* The rule creates a two-pronged test: objections to the charge must specify the error and the legal basis of the objection. *Sears, Roebuck & Co. v. Abell*, 157 S.W.3d 886, 892 (Tex. App.—El Paso 2005, pet. denied) (citing *Castleberry v. Branscum*, 721 S.W.2d 270, 276-77 (Tex. 1986)). Rule 274 is strictly construed and embodies a "rigorous standard for sufficiency of charge objections." *Meyers v. 8007 Burnet Holdings, LLC*, 600 S.W.3d 412, 421–22 (Tex. App.—El Paso 2020, pet. denied) (quoting *Abell*, 157 S.W.3d at 892).

"Our procedural rules are technical, but not trivial." *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014). And, although we construe those rules liberally so that the right to appeal is not lost unnecessarily, "we cannot make assumptions" when an objection fails to explain the nature of the error. *Id.* "Preservation of error reflects important prudential considerations recognizing that the judicial process benefits greatly when trial courts have the opportunity to first consider and rule on error." *Id.* "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objection." *Clark*, 460 S.W.3d at 729–30 (quoting TEX. R. CIV. P. 274). If an objection is not sufficient to apprise the trial court of the issue a party later claims is error on appeal, the issue must be overruled. *Meyers*, 600 S.W.3d at 422–24.

**B. Application of the law to the facts**

This Court has previously reviewed the global denial utilized by this trial judge. We determined a party's failure to lodge objections to the charge following the judge's statements waived that party's allegations of charge error on appeal. *Clark*, 460 S.W.3d at 729–30. In *Clark,* as here, the trial judge held the same truncated "charge conference" and made the nearly identical global denial of the parties' requested instructions and questions:

> The Court: We're back on the record.
>
> I have given to—I discussed with counsel the form of the proposed charge to give to the jury.
>
> To the extent that either Plaintiff or Defendant has requested instructions or questions that are not included with the charge—in my charge, the request to include same is denied, the objection to the failure to include same is overruled.
>
> To the extent that the Court's charge includes instructions and/or questions which either party has not included in its proposed charge, the request to excise same is denied, the objection to the failure to excise same is overruled. Okay?
>
> [Clark's attorney]: Yes, Your Honor.
>
> The Court: I think that covers all the objections to the charge.

*Id.* at 730. There, as here, appellant argued the trial court's global denial of objections was sufficient to preserve appellant's allegations of charge error. *Id.* We disagreed and concluded that neither the "charge conference" nor any other part of the record showed that appellant had timely objected to the jury questions that he sought to complain about on appeal. *Id.* The same is true here.

–29–

The parties' proposed charges included no objections to the other parties' proposed charges and included no legal analysis explaining why each instruction, definition, and question included in the proposed charges were in substantially complete form and should be submitted to the jury. Although ACCSC cited to the Texas Pattern Jury Charges, those citations merely provided the legal authority for the form of the proposed charge, not ACCSC's legal basis for including each question, instruction, and definition in its proposal. Mere citation to the pattern jury charges was, thus, insufficient to preserve error. And EYM's proposed charge included no citations to authority. These pretrial filings were merely a starting point provided before the case was even called to trial.

But more importantly, the pretrial proposed charges, standing alone, did not apprise the trial judge of the purported problems with and errors in the court's charge that EYM and ACCSC now assert on appeal, nor did they give the trial judge an opportunity to cure those purported errors. For an issue to be preserved for appeal, the party raising the issue must first raise it with the trial court and give the trial court the opportunity to consider and rule on the alleged error. TEX. R. APP. P. 33.1(a); *Burbage*, 447 S.W.3d at 257–58; *Cruz*, 364 S.W.3d at 829. The inquiry about whether a party adequately preserved an alleged jury charge error for appeal focuses on the trial court's awareness of and opportunity to remedy the alleged problem. *Cruz*, 364 S.W.3d at 829–31 (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 240 (Tex.1992)); *see also Alaniz v. Jones & Neuse, Inc.*,

–30–

907 S.W.2d 450, 451–52 (Tex.1995) (per curiam) (party preserved alleged charge error concerning omission of question for future lost profits by submitting written damages question that included future lost profits and objecting on the record to the omission of future lost profits from the court's charge). As the Texas Supreme Court noted in *Cruz,* "trial court awareness is the key." 364 S.W.3d at 831. And, here, there is no indication in the record that the trial court was aware of appellants' concerns regarding the omission of ACCSC from the proportionate responsibility question, the lack of general definitions of negligence and ordinary care as those terms related to ACCSC, or ACCSC's complaint regarding submission of its liability in a general negligence question.

EYM and ACCSC argue in their third and fourth issue respectively that the jury charge should have included EYM, ACCSC, and Yousef in the proportionate responsibility question. The record, however, includes no discussions regarding proportionate responsibility as applied in this case. Yousef's proposed charge did not include a proportionate responsibility question, whereas EYM and ACCSC's pretrial proposals included proportionate responsibility questions that included spaces for the jury to allocate responsibility between EYM, ACCSC, and Yousef. The trial court rejected those pretrial proposals by submitting EYM and Yousef in the proportionate responsibility question. But nothing in the record shows that EYM and ACCSC requested or intended to request a proportionate responsibility question submitting all three parties after the close of evidence. Had either EYM or ACCSC

–31–

made such a request at the charge conference, however, it is possible the court would have submitted the proportionate responsibility question as requested. At a minimum, the trial judge would have been aware of EYM and ACCSC's complaint regarding the court's proportionate responsibility question and had an opportunity to correct the charge or deny the request and overrule the objection. But neither EYM nor ACCSC gave the trial judge that opportunity.

Similarly, ACCSC argues in its first issue that the charge erroneously omitted general definitions of "negligence" and "ordinary care" as related to ACCSC. All three parties included separate definitions for those terms as they related to EYM and ACCSC in their proposed charges. Yet, the trial court's charge included no definitions related specifically to ACCSC. It is, therefore, possible if not probable that the omission of definitions related to ACCSC was simply an oversight. On this record, however, we will never know if that is the case because neither EYM nor ACCSC raised the issue at the charge conference. Indeed, there is no discussion in the record concerning the definitions of "negligence" and "ordinary care" as between EYM and ACCSC.

Finally, ACCSC argues in its second issue that the trial court erred by submitting a liability question against ACCSC under a general negligence theory. Again, ACCSC did not bring this complaint to the trial court's attention at trial. Moreover, ACCSC's pretrial proposed charge did not include the question ACCSC now maintains the trial court should have submitted. Rather, ACCSC's proposed

charge included a general negligence question substantially similar to the one submitted to the jury. Here, the trial judge had no awareness of the complaint ACCSC now asserts on appeal.

By asserting no objections to the court's charge and submitting no requested instructions, questions, or definitions after the close of evidence but before the charge was read to the jury, EYM and ACCSC failed to make the trial judge aware of the complaints of charge error they now make on appeal. Those complaints are, therefore, waived. *See Cruz*, 364 S.W.3d at 831 (holding party could complain on appeal only if it made trial court aware, timely and plainly, of purported problem and obtained a ruling); *see also Tex. Youth Comm'n v. Koustoubardis*, 378 S.W.3d 497, 501 (Tex. App.—Dallas 2012, no pet.) ("Nothing about TYC's objection would have made the trial court aware that TYC was concerned the question regarding the section 64.102 claim would "lower the causation standard of proof" on the whistleblower claim").

Although we sympathize and vehemently disagree with the predicament the trial judge placed trial counsel in, fear of ridicule or reprimand by a trial judge should not stand in the way of protecting the appellate rights of one's client. Moreover, there are various ways to preserve error within the confines of a tightly run courtroom. Examples here would have included asking the trial judge for a few minutes on the record to make formal objections and requests and obtain rulings regarding specific issues with the charge, or filing written objections and requests and obtaining written

rulings or rulings on the record. We are confident and would certainly hope the trial judge, when presented with timely, organized, and professional efforts to create a record to preserve error, would oblige such efforts.

On this record, however, we cannot say that the trial court had the opportunity to remedy the alleged charge errors. Consequently, EYM and ACCSC have waived these complaints on appeal. *See* TEX. R. CIV. P. 272, 273, 274, 279; TEX. R. APP. P. 33.1(a); *see also Burbage*, 447 S.W.3d at 256; *Cruz*, 364 S.W.3d at 831; *Nowlin v. Keaton*, No. 03-14-00608-CV, 2015 WL 3542895, at *4 (Tex. App.—Austin June 4, 2015, no pet.) (mem. op.) (issues of charge error waived where there was no discussion on the record of the issues raised on appeal and the party did not object to the question submitted to the jury.). Accordingly, we overrule EYM's third issue and ACCSC's first, second, and fourth issues.

### C. ACCSC is not entitled to rendition of judgment notwithstanding the verdict based on alleged charge error.

ACCSC also argues it is entitled to rendition of judgment in its favor because Yousef failed to object to the exclusion of definitions of "negligence" and "ordinary care" related specifically to ACCSC under a general negligence theory. ACCSC contends the charge should have included the general definitions of "negligence" and "ordinary care" that applied to the negligence claim asserted against ACCSC. According to ACCSC, by failing to include those definitions in the charge, the wrong theory of negligence was asserted against ACCSC, and the jury essentially found

ACCSC negligent on a premises liability theory. Relying on *United Scaffolding v. Levine*, 537 S.W.3d 463 (Tex. 2017), ACCSC argues the only remedy for this error is to reverse and render judgment for ACCSC because Yousef did not object when the correct definitions were excluded from the charge. ACCSC is incorrect for two reasons.

First, ACCSC's reliance on *United Scaffolding* is misplaced because Yousef pleaded a general negligence claim against ACCSC and obtained a liability finding from the jury based on general negligence at trial. In *United Scaffolding*, the plaintiff, James Levine, pleaded one theory (premises liability) and obtained a jury finding on a different theory (general negligence). 537 S.W.3d at 472–73, 480–81. Under those circumstances, Levine waived error because he obtained a jury finding on an unpleaded claim, and the court reversed the judgment against United Scaffolding. *Id.* at 481. The same result is not appropriate here because Yousef's pleadings against ACCSC match the jury question and jury's findings against ACCSC. Namely, Yousef pleaded a general negligence claim against ACCSC and obtained a jury finding on that claim.

Second, United Scaffolding preserved its arguments that the verdict was based on an improper theory of recovery by filing a motion for judgment notwithstanding the verdict. *United Scaffolding*, 537 S.W.3d at 482. Here, ACCSC filed no such motion and makes no such argument. ACCSC merely asserts charge error here. ACCSC waived any complaint about the charge by failing to object to the charge as

discussed above. And, by failing to file a motion for judgment notwithstanding the verdict or other qualifying post-verdict motion raising this argument, ACCSC also waived any complaint that Yousef was not entitled to obtain a jury finding as to ACCSC's general negligence. Accordingly, this is an additional basis under which we overrule ACCSC's first and second issues.

## III.     Denial of Motion for New Trial

EYM and ACCSC further complain that the trial court denied their joint motion for new trial. We review a trial court's denial of a motion for new trial for abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010); *Aztec Sys., Inc. v. Prevett*, No. 05-18-00183-CV, 2019 WL 1417172, at *3 (Tex. App.—Dallas Mar. 29, 2019, no pet.) (mem. op.) (citing *Dugan v. Compass Bank*, 129 S.W.3d 579, 582 (Tex. App.—Dallas 2003, no pet.)). "Under this standard, we may not overrule the trial court's decision unless the trial court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles." *James v. Witherite*, No. 05-17-00799-CV, 2018 WL 5869641, at *11 (Tex. App.—Dallas Nov. 9, 2018, no pet.) (mem. op.) (citing *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991)).

EYM and ACCSC raised two grounds for a new trial. First, they argued the verdict was against the great weight and preponderance of the evidence. As discussed above, we conclude the evidence was factually sufficient to support the verdict. The evidence at trial was conflicting, but the jury weighed that evidence,

judged the credibility of the witnesses, and returned a verdict in favor of Yousef. Accordingly, the trial court did not abuse its discretion by denying a new trial on EYM's and ACCSC's arguments that the verdict was against the great weight and preponderance of the evidence. *See Aztec Sys.*, 2019 WL 1417172, at *5 ("Nor did the trial court act without reference to guiding rules and principles by overruling Aztec's motion for new trial where there was legally and factually sufficient evidence to support the jury's findings.").

Second, EYM and ACCSC argued the failure to include ACCSC in the proportionate responsibility question entitled them to a new trial. As discussed above, EYM and ACCSC failed to preserve that error for review and cannot revive that argument by raising it for the first time in a motion for new trial. *See Plaza at Turtle Creek, Ltd. v. Henry Bldg., Inc.*, No. 08-00-00416-CV, 2002 WL 59603, at *4 (Tex. App.—El Paso Jan. 17, 2002, no pet.) (mem. op.) ("Charge error may not be raised for the first time in a motion for new trial.") (citing *Volkman v. Eakman*, 496 S.W.2d 752, 757 (Tex. Civ. App.—Fort Worth 1973, writ ref'd n.r.e.)).

Moreover, the charge was legally correct. First, as a nonsubscriber, ACCSC was not entitled to have its responsibility compared with Yousef's responsibility. *See Kroger Co. v. Keng*, 23 S.W.3d 347, 352 (Tex. 2000) (non-subscribing employer is not entitled to a jury question on its employee's alleged comparative responsibility); *see also* TEX. LAB. CODE § 406.033(a). A proportionate

responsibility question comparing the responsibility of EYM, ACCSC, and Yousef would have, therefore, been legally incorrect.

Second, the rule of joint and several liability applies here. *See Landers v. E. Tex. Salt Water Disposal*, 151 Tex. 251, 256, 248 S.W.2d 731, 734 (1952). "Where the tortious acts of two or more wrongdoers join to produce an indivisible injury, that is, an injury which from its nature cannot be apportioned with reasonable certainty to the individual wrongdoers, all of the wrongdoers will be held jointly and severally liable for the entire damages and the injured party may proceed to judgment against any one separately or against all in one suit." *Id.* at 734. In *Landers*, the plaintiff alleged the pipelines of two separate defendants broke and poured saltwater and oil into the plaintiff's lake, producing an indivisible injury. *Id.* at 731–32. The supreme court held that these allegations were sufficient to assert joint and several liability. *Id.* at 734.

Here, the premises tort liability of EYM and the negligence tort liability of ACCSC cannot be apportioned with reasonable certainty between EYM and ACCSC because there was one, indivisible injury. Accordingly, joint and several liability was the only possible judgment following the jury finding that EYM and ACCSC's negligence proximately caused the occurrence. As such, it was not an abuse of discretion to deny a new trial on that ground. *See Lakes of Rosehill Homeowners Ass'n, Inc. v. Jones*, 552 S.W.3d 414, 418, 422 (Tex. App.—Houston [14th Dist.] 2018, no pet.). We overrule EYM's fourth issue and ACCSC's fifth issue.

## IV.     Cumulative Error

Finally, EYM Diner and ACCSC contend the cumulative error doctrine entitles them to a new trial. We disagree. Under the cumulative error doctrine, multiple errors, even if considered harmless when taken separately, may result in reversal and remand for a new trial if the cumulative effect of such errors is harmful. *Lakeside Vill. Homeowners Ass'n, Inc. v. Belanger*, 545 S.W.3d 15, 46–47 (Tex. App.—El Paso 2017, pet. denied); *Brown v. Hopkins,* 921 S.W.2d 306, 319 (Tex. App.–Corpus Christi–Edinburg 1996, no writ). To show cumulative error, an appellant must show that, based on the record as a whole, but for the alleged errors, the jury would have rendered a verdict favorable to it. *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 810 (Tex. App.—Dallas 1987, no writ). To make that determination, this Court considers all errors in the case along with the record as a whole to determine if the errors collectively were calculated to cause and probably did cause the rendition of an improper judgment. *Belanger*, 545 S.W.3d at 46–47. The cumulative error doctrine does not apply when an appellate court determines the trial court committed no errors. *In re A.M.*, 418 S.W.3d 830, 844 (Tex. App.—Dallas 2013, no pet.).

The cumulative error doctrine does not apply in this case because we have not found any errors committed by the trial court. *See id.*; *see also Univ. of Tex. v. Hinton*, 822 S.W.2d 197, 205 (Tex. App.—Austin 1991, no writ). Accordingly, we overrule EYM's fifth issue and ACCSC's sixth issue.

## CONCLUSION

For the foregoing reasons, we conclude the evidence is factually sufficient to support the jury's findings of negligence, find no charge error, conclude the trial court did not abuse its discretion by denying appellants' joint motion for new trial, and find no cumulative error. Accordingly, we overrule appellants' issues and affirm the judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

190636F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EYM DINER L.P. D/B/A DENNY'S AND AIR CONDITIONING CONTROL SERVICE COMPANY, Appellants

No. 05-19-00636-CV        V.

KHALED YOUSEF, Appellee

On Appeal from the 14th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-18-00546. Opinion delivered by Justice Partida-Kipness. Justice Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee KHALED YOUSEF recover his costs of this appeal from appellants EYM DINER L.P. D/B/A DENNY'S AND AIR CONDITIONING CONTROL SERVICE COMPANY.

Judgment entered this 24th day of November, 2020.