In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00101-CV**

_____

**IN RE COMMITMENT OF JOEL LOPEZ**

**On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 13-10-10753 CV**

**OPINION**

The State of Texas filed a petition to civilly commit Joel Lopez as a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001-.151 (West 2010 & Supp. 2014) ("the SVP statute"). A jury found that Lopez is a sexually violent predator, and the trial court rendered a final judgment and an order of civil commitment. In five appellate issues, Lopez contends the State's original petition was barred by the statute of limitations, the trial court erred in allowing improper jury argument, the evidence is legally and factually insufficient to support the jury's finding that Lopez suffers from a behavioral abnormality, and this Court's decision in *In re Commitment of Richard*, No. 09-13-00539-CV, 2014 WL

1

2931852 (Tex. App.—Beaumont June 26, 2014, pet. denied), *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. Feb. 10, 2015) (mem. op.) renders Chapter 841 of the Texas Health and Safety Code unconstitutional. We overrule Lopez's issues and affirm the trial court's judgment.

## Section 841.041(b)'s Ninety-Day Deadline

In his first issue, Lopez challenges the trial court's denial of his motion for summary judgment. According to Lopez, the State failed to file its petition against him within the ninety-day deadline reflected in section 841.041(b)(1) of the Texas Health and Safety Code. Lopez contends that the trial court should have granted his motion for summary judgment because the ninety-day deadline either created a mandatory condition precedent to filing suit or a statute of limitations. The State concedes that it filed its petition outside the ninety-day deadline established in section 841.041(b)(1) but contends that section 841.041(b)(1) creates a directory filing deadline and not a mandatory statute of limitations.

The record reveals that on January 23, 2013, the Texas Department of Criminal Justice ("the Department") informed the State that the multidisciplinary team had determined that Lopez is a repeat sexually violent predator and is likely to reoffend. The State received the letter on January 31, 2013 and, it is undisputed that the State timely filed a petition against Lopez in cause number 13-04-04177-CV on April 19, 2013. However, the State nonsuited its original case against

2

Lopez. The State explained that the original case against Lopez was set for trial on October 7, 2013, and on the morning of trial, the State was forced to seek a continuance because its expert witness had been attacked over the weekend and was unable to testify. During the hearing on the State's motion for continuance, the trial court inquired whether there would be a limitation problem with the refiling of the petition against Lopez. Lopez's attorney responded, "I don't think there's any limitation on these actions once it's been filed timely." The trial court denied the State's motion for a continuance.[1] Because the State was unable to meet its burden of proof without its expert's testimony, the State filed a nonsuit of its petition. The trial court signed an order of dismissal.

On the same day it nonsuited the original case, the State refiled its petition against Lopez on October 7, 2013. On October 23, 2013, Lopez filed his answer to the State's petition and raised limitations as an affirmative defense. On December 11, 2013, Lopez filed a motion for summary judgment alleging that the State's petition was barred by the statute of limitations since the State filed its petition later than ninety days after the date Lopez had been referred to the State. The trial court denied Lopez's motion without stating its reasons for doing so.

---

[1] We note that a visiting judge was sitting for the 435th District Court at the hearing on the State's motion for continuance.

We review a trial court's summary judgment ruling de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a summary judgment, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id*. The movant has the burden to show no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *Id*. at 216. We review statutory construction de novo. *Loaisiga v. Cerda*, 379 S.W.3d 248, 254-55 (Tex. 2012). Our objective is to give effect to the Legislature's intent. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). "The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Id*.

Lopez contends that the ninety-day deadline in section 841.041(b) creates a statute of limitations within which the State must file petitions for civil commitment. We disagree with Lopez's characterization of the statute, and hold that section 841.041(b) is properly characterized as a directory filing deadline.

There is no "absolute test" for a court to apply to determine whether a statutory provision is directory or mandatory. *Chisholm v. Bewley Mills*, 287 S.W.2d 943, 945 (Tex. 1956). Generally, statutes that use words like "'shall'" or "'must'" are construed as mandatory, and, therefore, as creating a duty or obligation. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *see also*

4

*Chisholm*, 287 S.W.2d at 945. Section 311.016 of the Texas Government Code explains that when construing statutes, courts should construe the word "must" as creating or recognizing a condition precedent unless a different construction is expressly provided or the context in which the word appears necessarily requires a different construction. Tex. Gov't Code Ann. § 311.016 (West 2013). However, in certain circumstances, courts have construed "shall" and "must" as being directory rather than mandatory. *See, e.g., Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 309-11 (Tex. 1976); *In re Commitment of Letkiewicz*, No. 01-13-00919-CV, 2014 WL 2809819, at *8-11 (Tex. App.—Houston [1st Dist.] June 19, 2014, no pet.) (mem. op.); *In re A.G.C.*, 279 S.W.3d 441, 447 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *Tex. Mut. Ins. Co. v. Vista Cmty. Med. Ctr., LLP*, 275 S.W.3d 538, 552-53 (Tex. App.—Austin 2008, pet. denied); *see also Chisholm*, 287 S.W.2d at 945. Courts generally do not construe statutory provisions as mandatory when they "are included for the purpose of promoting the proper, orderly and prompt conduct of business[.]" *Chisholm*, 287 S.W.2d at 945. "If a provision requires that an act be performed within a certain time without any words restraining the act's performance after that time, the timing provision is usually directory." *Helena Chem.*, 47 S.W.3d at 495; *see Chisholm*, 287 S.W.2d at 945. However, the absence of a noncompliance penalty in a statute with a "must" provision does not automatically mean that the statute is not mandatory. *See*

5

*Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 404 (Tex. 2009). When the statute does not provide a penalty for noncompliance, the courts look to the statute's purpose for guidance in its construction. *Id.*; *Helena Chem.*, 47 S.W.3d at 494. In construing the statute, we should consider "the entire act, its nature and object, and the consequences that would follow from each construction." *Chisholm*, 287 S.W.2d at 945.

Because we consider the entire act in construing section 841.041(b), we must first give a general overview of the SVP statute to place the provision at issue in context. The SVP statute requires the Department to notify the multidisciplinary team (created by the SVP statute) of potential predators that are serving sentences for certain sexually violent offenses and who may also be considered repeat sexually violent offenders.[2] Tex. Health & Safety Code Ann. §§ 841.021(a); 841.022. The Department is to notify the multidisciplinary team "not later than the first day of the 16th month before the person's anticipated release or discharge date, but under exigent circumstances may give the notice at any time before the anticipated release or discharge date." *Id.* § 841.021(c). Within sixty days of receiving notice from the Department, the multidisciplinary team must: (1)

---

[2] The SVP statute also contains a provision requiring the Department of State Health Services to notify the multidisciplinary team of the anticipated release of a person who is committed to the department after having been adjudged not guilty by reason of insanity of certain sexually violent offenses and may be a repeat sexually violent offender. *Id.* § 841.021(b).

6

determine whether the person is a repeat sexually violent offender and whether the person is likely to commit another sexually violent offense after release; (2) notify the Department of its determination; and (3) if appropriate, recommend the person to be assessed for a behavioral abnormality. *Id*. § 841.022(c). Within sixty days of the multidisciplinary team's recommendation, the Department must engage an expert to assess whether the person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id*. § 841.023(a). If the expert's assessment leads the Department to believe the person suffers from a behavioral abnormality, the Department must notify the State's attorney within sixty days after the date of the multidisciplinary team's recommendation of the Department's assessment and provide corresponding documentation thereof. *Id*. § 841.023(b).

If a person is referred to the State's attorney, the State may file a petition alleging that the person is a sexually violent predator ("SVP") and stating facts sufficient to support the allegation. *Id*. § 841.041(a). Section 841.041(b) provides that the State's petition "must be: (1) filed not later than the 90th day after the date the person is referred to the attorney representing the state; and (2) served on the person as soon as practicable after the date the petition is filed." *Id*. § 841.041(b). The ninety-day filing deadline commences when the State's attorney receives the referral letter from the Department. *In re Commitment of Williams*, No. 09-14-

00029-CV, 2014 WL 4363623, at *1-2 (Tex. App.—Beaumont Sept. 4, 2014, pet. denied) (mem. op.). The SVP statute requires the judge to conduct a trial to determine whether the person is an SVP "[n]ot later than the 270th day after the date [the] petition is served[.]" Tex. Health & Safety Code Ann. § 841.061(a). However, the SVP statute allows the trial court to continue a trial or hearing if the person is not substantially prejudiced by the continuance and on the request of either party and a showing of good cause or on the judge's own motion in the due administration of justice. *Id*. § 841.063.

In construing section 841.041, we first note that the Legislature titled it, "Petition Alleging Predator Status[.]" *Id*. § 841.041. A statute's heading cannot limit or expand the actual text's meaning. Tex. Gov't Code Ann. § 311.024 (West 2013). That said, we consider the heading as some indication of the Legislature's intent. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 307 (Tex. 2010). We further note that the text of section 841.041 does not contain the word "limitations" or any variation thereof. Tex. Health & Safety Code Ann. § 841.041. The statute does contain the word "must[,]" which makes the provision appear mandatory; however, the SVP statute does not indicate any consequence for noncompliance with section 841.041. While the statute's lack of a consequence weighs in favor of construing it as a directory provision, the absence of a penalty does not

automatically compel the conclusion that it is not a mandatory provision. Thus, we consider the SVP statute's purpose. We have previously explained:

> [t]he SVP statute accomplishes dual interests that are possessed by the State: (1) the *parens patriae* power to provide care to its citizens who are unable because of emotional disorders to care for themselves; and (2) the police power to protect the community from the dangerous tendencies of some who lack volitional control over certain types of dangerous behaviors.

*In re Commitment of Rushing*, No. 09-11-00268-CV, 2012 WL 4466421, at *2 (Tex. App.—Beaumont Sept. 27, 2012, no pet.) (mem. op.) (citing *In re Commitment of Fisher*, 164 S.W.3d 637, 651 (Tex. 2005)). Section 841.001 of the SVP statute provides the Legislature's findings regarding the issues addressed within the SVP statute and are useful in construing the SVP statute's purpose:

> The legislature finds that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. The legislature finds that the existing involuntary commitment provisions of Subtitle C, Title 7, are inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to society. The legislature further finds that treatment modalities for sexually violent predators are different from the traditional treatment modalities for persons appropriate for involuntary commitment under Subtitle C, Title 7. Thus, the legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.

Tex. Health & Safety Code Ann. § 841.001 (footnotes omitted). "The intended result of the statute is to prevent repeated predatory behavior by providing sex

9

offender treatment to persons afflicted with a difficulty controlling their behavior that predisposes them to sexual violence to the extent they become a menace to the health and safety of others." *Rushing*, 2012 WL 4466421, at *2.

Based on the goals of the SVP statute as identified above, the deadline created in section 841.041(b) is properly construed as a provision in which the Legislature sought to promote "the proper, orderly and prompt conduct of business" in commitment proceedings under the SVP statute. *Chisholm*, 287 S.W.2d at 945; *see also Letkiewicz*, 2014 WL 2809819, *10. The SVP statute's provisions show the importance the Legislature has placed on identifying these dangerous individuals and providing them with the treatment and supervision needed. *See* Tex. Health & Safety Code Ann. § 841.001; *see also Rushing*, 2012 WL 4466421, at *2.

The purpose behind the SVP statute does not support a construction in which the Legislature intended to fix a time limitation upon the power of the State to seek committal against the "extremely dangerous group of sexually violent predators" known to exist. *See* Tex. Health & Safety Code Ann. § 841.001. If the Legislature had intended section 841.041 to be mandatory, it could have easily provided a consequence for noncompliance, and it did not. *See id.* § 841.041(b). We hold the ninety-day provision of section 841.041(b) is a directory filing deadline.

The observance of a directory provision is not necessary to the validity of the underlying proceeding. *Tex. Dep't of Public Safety v. Dear*, 999 S.W.2d 148, 151 (Tex. App.—Austin 1999, no pet.). "If the legal consequence of failing to comply with a directory provision were the same as that for failing to comply with a mandatory provision, there would be no meaningful distinction between the two." *Id*. at 152. Thus, if a timing provision is directory and the act is performed, but just not performed in the time or manner indicated in the statute, the act will be deemed sufficient provided it accomplishes the substantial purpose of the statute. *See id*. (quoting *State v. Fox*, 133 S.W.2d 987, 990 (Tex. Civ. App.—Austin 1939, writ ref'd)).

Here, the purpose of the SVP statute is to prevent repeated predatory behavior. The State's actions in this case substantially fulfilled the purpose of the statute. The question is whether the State substantially complied with the SVP commitment process, one requirement of which was the filing deadline in section 841.041(b). *See Edwards Aquifer Auth.*, 291 S.W.3d at 403. There is no dispute that the State filed a petition against Lopez timely, but was forced to nonsuit that petition because of unforeseen circumstances. The same day that the State filed its nonsuit of the original case, it refiled its petition against Lopez. At the time the court agreed to dismiss the original case, Lopez's counsel informed the court on the record that he did not believe there would be any limitations issues arising from

11

the nonsuit and dismissal. The parties entered into a Rule 11 agreement in which they agreed that the responses to discovery in the original case would be honored by both parties. The trial court ordered all pre-trial documents from the original case transferred to the refiled case. The trial took place from January 27, 2014 through January 30, 2014, well before Lopez's release date of April 14, 2014. Because Lopez has challenged no other actions of the State regarding the pre-suit civil commitment process, we assume for purposes of this opinion that the State complied with those other provisions. We conclude, under the circumstances presented in this case, the State's actions were sufficient to accomplish the substantial purpose of the SVP statute. We conclude the trial court did not err in denying Lopez's motion for summary judgment. We overrule Lopez's first issue.

### Improper Jury Argument

In his second issue, Lopez contends the trial court erred in allowing the State to use evidence that was admitted for the limited purpose of explaining the basis of an expert's opinion as substantive evidence of its truth during the State's closing argument. Lopez specifically complains about the following portion of the State's final closing argument:

> I want you to imagine the condition that an individual must be in at 29 years of age, to hold down a four-year-old child or a six-year-old child and to force his erect penis into their anus repeatedly, ejaculate while aroused to the entire experience --

[DEFENSE COUNSEL]: Objection, appeals to passion and prejudice of the jury.

THE COURT: Overruled.

[STATE]: -- and then do it to another child.

A complaint about improper jury argument must ordinarily be preserved by a timely objection that is overruled. *Living Ctrs. of Tex., Inc. v. Peñalver*, 256 S.W.3d 678, 680 (Tex. 2008); *see* Tex. R. App. P. 33.1. A complaint of incurable argument, by contrast, does not require an objection, but a party is required to present any complaint regarding incurable jury argument in a motion for new trial to preserve the complaint for review. *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009); *see* Tex. R. Civ. P. 324(b)(5). Here, Lopez did not object to the State's alleged improper argument at trial or in his motion for new trial on the grounds he now asserts on appeal. Further, Lopez did not argue in his motion for new trial that the State's jury argument was incurable. The objection Lopez raised at trial—that the State's argument appeals to the passions and prejudices of the jury—does not comport with his complaint on appeal that the State's argument essentially encouraged the jurors to violate the trial court's limiting instruction. An issue on appeal must comport with the objection made at trial; otherwise, the issue is not preserved for appellate review. *See In re Commitment of Weissinger*, No. 09-12-00486-CV, 2013 WL 3355758, at *3 (Tex. App.—Beaumont June 27, 2013,

13

pet. denied) (mem. op.). Because Lopez has failed to properly preserve error as to this issue and has therefore waived it, we overrule his second issue. *See* Tex. R. App. P. 33.1(a).

## Sufficiency Challenges

In his third and fourth issues, Lopez argues that the evidence is legally and factually insufficient to support a finding that he has a behavioral abnormality. Lopez argues that the jury's finding that he has a behavioral abnormality rests entirely on the opinion of the State's expert that Lopez is a pedophile and has more than a mere possibility of reoffending based on non-substantive evidence admitted for a limited purpose that Lopez sexually assaulted his two nephews over a period of one and a half years and other factors not "born out in empiric research."

In a legal sufficiency challenge in an SVP case, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). It is the factfinder's responsibility to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id*. at 887. In a factual sufficiency challenge, we weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel

14

ordering a new trial." *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied).

In an SVP case, the State must prove, beyond a reasonable doubt, that a person is a sexually violent predator. Tex. Health & Safety Code Ann. § 841.062(a). The SVP statute provides that a "sexually violent predator" is a "repeat sexually violent offender[]" who "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a). Section 841.002 defines "'[b]ehavioral abnormality'" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

During trial, the jury heard Lopez's admissions that he has two convictions for aggravated sexual assault of a child, that he sexually assaulted children because of lack of intimacy in his adult life, and that he sexually offended although he knew it was wrong. Lopez admitted to having been arrested for possession of marijuana, arrested twice for public intoxication, and receiving three convictions for driving while intoxicated.

Lopez testified that he was also convicted of robbery and had trouble complying with the reporting terms of his probation. Lopez testified that although

15

he knew he would go to prison if he violated the terms of his probation, he quit reporting to his probation officer anyway. When his probation was revoked, Lopez received a five-year sentence. Lopez was released on parole from that sentence, and while he was on parole, he received his two convictions for aggravated sexual assault of a child. Lopez testified that he has been able to follow the rules in prison, but admitted that he does not do well when he is placed on probation.

Lopez testified that the two children he offended against were his nephews, ages four and six, respectively, at the time of the assaults. Lopez testified that he lied during his deposition when he denied having sexually assaulted his youngest nephew. Regarding his older nephew, Lopez also admitted to lying during his deposition when he denied having penetrated the child anally. Lopez admitted that he sexually assaulted each child once, but he denied that he sexually assaulted either child numerous times over a period of a year and a half. Lopez admitted that he became sexually aroused by contact with his nephews. However, Lopez denied being sexually attracted to children generally and denied specifically that he had been sexually attracted to his nephews when he sexually assaulted them.

Lopez testified that he completed a nine-month sex-offender-treatment program, but agrees he needs additional treatment. He candidly admitted that he does not know what his triggers are. He professed though that he is at his highest risk when he is lacking intimacy in his life and that he needs to avoid "any place

where kids may hang out, arcades, beaches, [and] parks." He admitted further that he would need to avoid being alone with children. Lopez admitted that he is a sex offender, that he can never be cured, and that he needs to know how to manage his condition. He testified that he could not truthfully say he would never lose control of his sexual urges again. However, Lopez denied that he continues to have deviant sexual thoughts.

Lopez is remorseful for what he did to his two nephews. Lopez explained that he was drinking at the time of his sexual offenses, but he denied being "drunk[.]" While Lopez contends that he quit drinking when he went to prison, he admitted that he has not received any substance abuse treatment while in prison.

Dr. David Self, a medical doctor specializing in general and forensic psychiatry, testified that Lopez has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Self opined that Lopez is sexually deviant. Self diagnosed Lopez with "nonspecific personality disorder with prominent antisocial traits[,]" substance abuse in institutional remission, and male-attracted pedophilic disorder, nonexclusive type. Self explained to the jury that pedophiles that abuse male children are at the highest risk—they are most likely to reoffend, they are likely to offend the most number of victims in comparison to other paraphilic sexual deviants, and they have a longer deviancy period into the life cycle than most others. Self testified that pedophilia is a lifelong disease that

17

cannot be cured. Self explained that certain identified risk factors increase Lopez's risk for re-offending: he suffers from sexual deviance, maintains attitudes tolerant of sexual assault, committed the offenses while under state supervision over an extended time span of a year and a half, has an unstable lifestyle manifesting in criminality, and suffers from substance abuse. Contrary to Lopez's testimony, Self maintains that he does not believe Lopez has truly demonstrated empathy for his victims.

Dr. Self reported that Dr. Jason Dunham also concluded that Lopez has a behavioral abnormality. Self testified that Dunham scored Lopez on the Static-99R as being at low-moderate risk for re-offense, but Dunham clinically adjusted the score to indicate that Lopez is at high risk. Self explained to the jury that the Static-99R alone could not arrive at an accurate risk level for Lopez. He explained that Dunham adjusted the score to reflect for the duration, the likely number of offenses, and the nature of offenses that Lopez actually committed. Self testified that there was credible evidence in the records he reviewed that indicated that Lopez had engaged in extensive sexual abuse in the form of anal intercourse with each child on several occasions and had been abusing at least one of the children for a year and a half.

Self acknowledged on cross-examination that there does tend to be a decrease in behaviors associated with antisocial personality disorder as people age,

18

but explained that there is no change in the absence of empathy, remorse, or responsibility for one's actions associated with aging. Self reported that this decrease in behavior begins to become evident in the fourth decade of life and acknowledged that Lopez was about fifty-three years old at the time of trial.

Self observed that Lopez's testimony at trial indicates that he still has not taken full responsibility for his complete offensive history as he is only willing to admit to sexually assaulting each of his nephews once. Further, Lopez has not fully accepted that he has a problem with pedophilia or sexual deviancy as he continues to deny his sexual attraction to children.

The jury heard Self's testimony that Lopez has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, as well as evidence of Lopez's risk factors, sexual offenses, and diagnoses. The jury heard Lopez's admissions and testimony, including that he does not do well while on probation. The jury was entitled to infer Lopez's current dangerousness from Self's testimony, Lopez's past behavior, and Lopez's own testimony. *See In re Commitment of Wilson*, No. 09-08-00043-CV, 2009 WL 2616921, at *5 (Tex. App.—Beaumont Aug. 27, 2009, no pet.) (mem. op.). The jury, as the sole judge of the weight and credibility of the evidence, could reasonably conclude that Lopez suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Lowe*, No. 09-14-00098-

CV, 2014 WL 4363624, at *2 (Tex. App.—Beaumont Sept. 4, 2014, no pet.) (mem. op.).

Viewing the evidence in the light most favorable to the verdict, a rational jury could have found, beyond a reasonable doubt, that Lopez suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Therefore, we conclude, the evidence is legally sufficient. *See Mullens*, 92 S.W.3d at 885. Weighing all the evidence, the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. We overrule Lopez's third and fourth issues.

### In re Commitment of Richard

In his fifth issue, Lopez argues that this Court's decision in *Richard* renders Chapter 841 of the Texas Health and Safety Code unconstitutional. We have recently addressed and rejected this same argument. *See In re Commitment of Lucero*, No. 09-14-00157-CV, 2015 WL 474604, at *9-10 (Tex. App.—Beaumont Feb. 5, 2015, no pet. h.) (mem. op.). For the reasons discussed in *Lucero*, we conclude that Lopez has not shown that the SVP statute is unconstitutional. We overrule Lopez's fifth issue.[3]

---

[3] Lopez complains that the ruling in *Richard* allows the civil commitment of a person who has not been diagnosed with any mental disorder or condition. Here, the record demonstrates that Lopez was diagnosed by Dr. Self to have sexual deviance (pedophilia), and a nonspecific personality disorder with prominent

Having overruled all of Lopez's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on December 1, 2014
Opinion Delivered April 9, 2015

Before Kreger, Horton and Johnson, JJ.

---

antisocial traits. Dr. Self concluded that Lopez has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.