

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00233-CV

_____

IN RE: THE COMMITMENT OF DENNIS LARRY PARISH

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. CDC3-S-15436-23

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

Appellant Dennis Larry Parish appeals his civil commitment as a sexually violent predator (SVP). *See* Tex. Health & Safety Code Ann. § 841.003(a). He contends that the evidence was legally insufficient to support the jury's finding that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* We disagree and will affirm.

## I. Governing Law[1]

The Sexually Violent Predator Act (SVP Act) authorizes a person's civil commitment if a jury determines, beyond a reasonable doubt, that the person qualifies as an SVP—that is, that he "(1) is a repeat sexually violent offender;[2] and (2) suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." *Id.* §§ 841.003(a), .081(a). A "behavioral abnormality" refers to "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.*

---

[1]Because Parish challenges only the legal sufficiency, we will dispense with an introductory background section and begin with the applicable law and standard of review.

[2]A person qualifies as a "repeat sexually violent offender" if, among other things, he has been "convicted of more than one sexually violent offense and a sentence [has been] imposed for at least one of the offenses." *Id.* § 841.003(b); *see also* § 841.002(6). Parish does not challenge the jury's finding that he is a repeat sexually violent offender. *See id.* § 841.003(a)(1).

§§ 841.002(2), .003(a)(2). "Such an abnormality must cause the person serious difficulty in controlling his behavior." *In re Commitment of Gibson*, No. 02-24-00086-CV, 2024 WL 3897174, at *1 (Tex. App.—Fort Worth Aug. 22, 2024, no pet.) (mem. op.) (citing *In re Commitment of Gonzalez*, No. 02-21-00238-CV, 2022 WL 1183219, at *9 (Tex. App.—Fort Worth Apr. 21, 2022, pet. denied) (mem. op.)).

The "condition" and "predisposition" referred to in the statutory definition of behavioral abnormality are not separate components that must be proved; "'[b]ehavioral abnormality' means a congenital or acquired predisposition, due to one's emotional or volitional capacity, to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *In re Commitment of Lee*, No. 02-24-00188-CV, 2025 WL 305838, at *1 (Tex. App.—Fort Worth Jan. 23, 2025, no pet.) (quoting *In re Commitment of Bohannon*, 388 S.W.3d 296, 302–03 (Tex. 2012)). Additionally, "the behavioral[-]abnormality prong of Section 841.003 differs from the repeat-sexually-violent-offender prong because the latter proves past behavior while the former requires proof of 'a present condition that creates a likelihood of such conduct in the future.'" *Id.* (quoting *In re Commitment of Stoddard*, 619 S.W.3d 665, 677–78 (Tex. 2020)).

## II. Standard of Review

The sole issue in this appeal is the legal sufficiency of the implied behavioral-abnormality finding. In reviewing the sufficiency of such a finding, we ask whether a reasonable factfinder could have found, beyond a reasonable doubt, that the defendant

had the required behavioral abnormality that makes him likely to engage in future predatory acts of violence.[3] *Stoddard*, 619 S.W.3d at 668; *In re Commitment of Coles*, No. 02-21-00173-CV, 2022 WL 1496544, at \*4 (Tex. App.—Fort Worth May 12, 2022, no pet.) (mem. op.). We review the evidence in the light most favorable to the verdict. *Stoddard*, 619 S.W.3d at 675; *Coles*, 2022 WL 1496544, at \*4. The jury remains the sole judge of the witnesses' credibility and the weight to be given their testimony; we cannot replace the jury's credibility determinations with our own. *Stoddard*, 619 S.W.3d at 674. And we presume that the jury resolved all disputed evidence in favor of its finding if a reasonable jury could have done so. *Id.*

## III. The Evidence

The jury heard extensive evidence of Parish's prior sexually violent offenses, his longstanding pattern of sexually deviant behavior, his continued lack of insight, and a forensic psychologist's evaluation of his condition.

### A. Sexually Violent Offenses

Parish has been convicted for sex offenses against seven children. His convictions include offenses from the 1970s when he was in his twenties to the 1990s when he was in his forties. Parish also testified that he had not been convicted for every

---

[3]We review SVP-civil-commitment proceedings for legal sufficiency of the evidence using the appellate standard of review applied in criminal cases. *Stoddard*, 619 S.W.3d at 674–75; *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.).

child he had offended against. Parish admitted to, over the course of more than 20 years, committing sex offenses against 13 children.

Parish's previous convictions included indecency with a child by contact, indecency with a child by fondling, and aggravated sexual assault of a child—with all his victims younger than 14 at the time of each offense.[4]

## B. Parish's Sexual Deviance and Lack of Insight

Parish's numerous victims ranged in age from four to twelve years old, consisted of both boys and girls, and were a mix of family and non-family members. One of the children was also "mentally handicapped," and Parish's actions prompted an investigation and the child's ultimate removal from the home.

More than once during the 20-year span, Parish confessed to his sexual offenses and indicated that he did not wish to continue to offend against children. Yet he continued to reoffend—despite either being on supervision for a prior offense or having received treatment. Parish testified that after his final conviction in 1994 he stopped being attracted to children because he found religion. But Parish also admitted

---

[4]Parish does not dispute that indecency with a child by sexual contact and aggravated sexual assault of a child fall within the statutory list of "[s]exually violent offense[s]" required under Section 841.003(a)(1) of the SVP Act. *See* Tex. Health & Safety Code Ann. § 841.002(8)(A) (listing Texas Penal Code Section 21.11(a)(1)—indecency with a child by contact—and Section 22.021—aggravated sexual assault—as "[s]exually violent offense[s]").

that he had received a degree in theology during the time that he was committing sex offenses against children; according to him, it was "the wrong school of theology."

Parish's offenses also showed evidence of grooming—making the victims feel comfortable or buying them gifts to ensure their compliance. In particular, he invited neighborhood children to his home and asked them to keep his offenses a secret so that he would not get into trouble or go to jail.

## C. Behavioral-Abnormality Evaluation

Clinical and forensic psychologist Dr. Christine Reed conducted a forensic evaluation of Parish before the trial. To complete the behavioral-abnormality evaluation, Dr. Reed met with Parish for approximately three-and-a-half hours and reviewed Parish's prior offense reports, medical records, mental-health-treatment records, and disciplinary records. With the information gained from the interview and Parish's records, Dr. Reed used several instruments and actuarial measures to determine whether Parish has a behavioral abnormality. These instruments include the Hare Psychopathy Checklist Revised (PCLR), the Static-99R, and the Risk for Sexual Violence Protocol (RSVP). We discuss the results of each in turn.

The PCLR is a measure of psychopathy. Psychopathy is a longstanding pattern or personality disorder that involves violating or disregarding the rights of others and having problems with empathy and remorse. Parish's PCLR score was 17. Because Dr. Reed testified that someone with a score above 30 is a psychopath, Dr. Reed's scoring indicated that Parish has only moderate traits of psychopathy.

The Static-99R is an actuarial measure related to a person's risk of reoffending. Parish's Static-99R score was three. Dr. Reed testified that a score of three indicates that Parish's re-offense risk—as compared to other sex offenders—is average. Dr. Reed also testified that although there are recidivism rates associated with Static-99R scores, she finds the rates can be confusing and occasionally misleading and does not reference them. According to Dr. Reed, the Static-99R result was just one small part of Parish's evaluation.

The RSVP is a list of additional risk factors for an evaluator to consider. These risk factors include escalation, mental-health issues, substance abuse, and prior sexual abuse suffered. Dr. Reed discussed escalation in particular and how Parish's history of escalation—continuing to offend even after multiple convictions—was one of his risk factors. Dr. Reed also considered Parish's offenses against children both within and outside of his family and identified the behavior as evidence of Parish's escalation.

In addition to Parish's test results and risk factors, Dr. Reed identified protective or positive factors as well. Parish's age was one of these factors because increased age is associated with a lower risk of reoffending. But Dr. Reed noted that Parish's last offenses occurred when he was approximately 44 years old—an age at which he should have been at a lower risk of reoffending—yet he had still reoffended. Parish's completion of a sex-offender treatment program while in prison and his "relatively positive social support network in the community" were also protective factors. Dr. Reed noted that while these two protective factors are "technically positive," they are

"not as positive as they sound." First, Parish reoffended at an age when the risk for re-offense should have been lower. Second, although Parish participated in treatment while in prison, Dr. Reed pointed out that he had also participated in various forms of treatment before committing some of his offenses. And third, Parish's denying his offenses and minimizing what had happened caused his treatment providers to note concerns about his level of understanding of his treatment.

Dr. Reed diagnosed Parish with "pedophilic disorder, sexually attracted to both male and female, nonexclusive type." She described pedophilic disorder as having "recurrent sexual fantasies or behaviors over at least six months that involve prepubescent children."[5] Dr. Reed testified that this condition is chronic and does not just "go away."

Considering the test results, risk factors, and protective factors, Dr. Reed testified that Parish's biggest risk factor is his sexual deviance. According to Dr. Reed, pedophilia is a clear example of sexual deviance. She concluded that Parish's sexual deviance—his lengthy history of sexual attraction to children and willingness to offend against them despite getting into trouble and expressing remorse for his actions—supported the likelihood that he would engage in a predatory act of sexual violence again.

---

[5]Parish's youngest known victim was four years old, and he engaged in these behaviors over a much longer period than six months.

## IV. Parish's Challenge

Parish's sole issue is that the evidence is insufficient to support the finding that at the time of trial he had a behavioral abnormality that made him likely to engage in predatory acts of sexual violence. Parish complains that Dr. Reed's testimony prevents him from ever removing the diagnosis of pedophilic disorder, regardless of any showing of remorse or changed behavior. Specifically, Parish argues that Dr. Reed's conclusion was too vague in light of his completing a nine-month treatment program and his admitting to his prior offenses. This argument oversimplifies Dr. Reed's testimony and misinterprets the required finding under the statute.

First, Dr. Reed did not testify that a diagnosis of pedophilic disorder always means a person is likely to engage in predatory acts of sexual violence—as Parish implies. Instead, she testified that a person's simply saying that he is no longer attracted to children is not necessarily trustworthy to show a changed predisposition. And although Dr. Reed indicated that a person's past behavior is the best predictor for future behavior, her conclusion here was restricted to Parish, rather than any person with the same diagnosis.

And the State was not required to wait for a post-prison relapse to show that Parish was predisposed to sexual violence and had difficulty controlling his behavior. *See Gibson*, 2024 WL 3897174, at *5. Rather, the jury could have relied on evidence of Parish's past behavior to infer that at the time of trial he had serious difficulties controlling his current behavior. *See Gonzalez*, 2022 WL 1183219, at *9; *In re Commitment*

*of Lopez*, 462 S.W.3d 106, 116 (Tex. App.—Beaumont 2015, pet. denied) (holding jury could "infer [defendant's] current dangerousness from [expert] testimony, [defendant's] past behavior, and [defendant's] own testimony"). As Dr. Reed testified, when Parish was given the opportunity to control his behavior, he continued to reoffend—even escalating his conduct.

Second, Dr. Reed's testimony established that pedophilia is a congenital condition that affects a person's emotional or volitional capacity and does not just "magically disappear." Additionally, the only two protective factors she identified for Parish were "not as positive as they sound." Parish's risk for reoffending continued because "taking responsibility" after each offense did not appear to deter him from offending again, nor did his age. Further, even though Parish testified that he had taken responsibility for his actions, the jury also heard him repeatedly respond that he did not remember the details of his prior offenses. Dr. Reed linked Parish's responses that he did not remember the details of certain offenses to his minimization or denial of his offenses—particularly since Parish later provided the details that he ostensibly "could not recall."

Parish's implication that a diagnosis of pedophilic disorder essentially "dooms" a person to civil commitment fails to consider—and disregards—the plethora of evidence showing that when Parish did have the opportunity to "choose" how he responded to sexually deviant urges, he chose to reoffend against another child. The jury heard both Dr. Reed's and Parish's testimony. Considering that the jury is the sole

judge of the witnesses' credibility and the weight to be given their testimony, we conclude that the evidence is legally sufficient to support the jury's verdict. *See Stoddard*, 619 S.W.3d at 674. We overrule Parish's sole issue on appeal.

## V. Conclusion

Having overruled Parish's sole issue, we affirm the trial court's civil-commitment order. *See* Tex. R. App. P. 43.2(a).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: April 10, 2025

11