

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00399-CV

_____

IN RE THE COMMITMENT OF EDWARD LINCOLN GOFF

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CV24-1544

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Appellant Edward Lincoln Goff appeals his civil commitment as a sexually violent predator (SVP). *See* Tex. Health & Safety Code Ann. § 841.003(a). He contends that the evidence was legally insufficient to support the jury's finding that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* We disagree and will affirm.

## I. Governing Law[1]

The Sexually Violent Predator Act (SVP Act) authorizes a person's civil commitment if a jury determines, beyond a reasonable doubt, that the person qualifies as an SVP—that is, that he "(1) is a repeat sexually violent offender;[2] and (2) suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." *Id.* §§ 841.003(a), .081(a). A "behavioral abnormality" refers to "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* §§ 841.002(2), .003(a)(2); *see In re Commitment of Lee*, No. 02-24-00188-CV, 2025 WL

---

[1]Because Goff challenges only the legal sufficiency, we will dispense with an introductory background section and begin with the applicable law and standard of review.

[2]A person qualifies as a "repeat sexually violent offender" if, among other things, he has been "convicted of more than one sexually violent offense and a sentence [has been] imposed for at least one of the offenses." Tex. Health & Safety Code Ann. § 841.003(b); *see id.* § 841.002(6). Goff does not challenge the finding that he is a repeat sexually violent offender under the statute. *See id.* § 841.003(a)(1).

305838, at *1 (Tex. App.—Fort Worth Jan. 23, 2025, no pet.) (mem. op.) (quoting *In re Commitment of Bohannon*, 388 S.W.3d 296, 302–03 (Tex. 2012) (treating "condition" and "predisposition" as interchangeable terms for single statutory element)). "Such an abnormality must cause the person serious difficulty in controlling his behavior." *In re Commitment of Gibson*, No. 02-24-00086-CV, 2024 WL 3897174, at *1 (Tex. App.—Fort Worth Aug. 22, 2024, no pet.) (mem. op.) (citing *In re Commitment of Gonzalez*, No. 02-21-00238-CV, 2022 WL 1183219, at *9 (Tex. App.—Fort Worth Apr. 21, 2022, pet. denied) (mem. op.)). Additionally, "the behavioral[-]abnormality prong of Section 841.003 differs from the repeat-sexually-violent-offender prong because the latter proves past behavior while the former requires proof of 'a present condition that creates a likelihood of such conduct in the future.'" *Lee*, 2025 WL 305838, at *1 (quoting *In re Commitment of Stoddard*, 619 S.W.3d 665, 677–78 (Tex. 2020)).

## II. Standard of Review

The sole issue in this appeal is the legal sufficiency of the jury's implied behavioral-abnormality finding. In reviewing the sufficiency of such a finding, we ask whether a reasonable factfinder could have found, beyond a reasonable doubt, that the defendant had the required behavioral abnormality that makes him likely to engage in future predatory acts of violence.[3] *Stoddard*, 619 S.W.3d at 668; *In re Commitment of Coles*,

---

[3]We review SVP-civil-commitment proceedings for legal sufficiency of the evidence using the appellate standard of review applied in criminal cases. *Stoddard*, 619

3

No. 02-21-00173-CV, 2022 WL 1496544, at *4 (Tex. App.—Fort Worth May 12, 2022, no pet.) (mem. op.). We review the evidence in the light most favorable to the verdict. *Stoddard*, 619 S.W.3d at 675; *Coles*, 2022 WL 1496544, at *4. The jury remains the sole judge of the witnesses' credibility and the weight to be given their testimony; we cannot replace the jury's credibility determinations with our own. *Stoddard*, 619 S.W.3d at 674. And we presume that the jury resolved all disputed evidence in favor of its finding if a reasonable jury could have done so. *Id.*

### III. The Evidence

The jury heard extensive evidence of Goff's prior sexually violent offenses, his longstanding pattern of sexually deviant behavior and continued lack of insight, and a forensic psychologist's evaluation of his condition.

### A. Sexually Violent Offenses

Goff has been convicted for sex offenses against four children.[4] His convictions include offenses occurring between 2001 and 2014. Goff testified that, at the time of each offense, he was in a consensual sexual relationship with an adult.

---

S.W.3d at 674–75; *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.).

[4]Goff pled guilty to four counts of indecency with a child—one count for each child—and, at the time of this trial, was serving four concurrent seven-year sentences for these offenses.

All four of Goff's previous convictions were for indecency with a child by sexual contact.[5] Goff testified that he pled guilty in each of these cases "[b]asically to save [his] life" because he was facing up to 99 years' imprisonment and to prevent the victims from having to testify against him.

## B. Goff's Sexual Deviance and Lack of Insight

Goff's victims ranged in age from approximately four to eleven years old[6] at the time the sexual abuse began. The first and second victims are sisters and the daughters of a woman Goff was dating and living with at the time, the third victim was Goff's stepdaughter, and the fourth victim was a neighbor whom Goff abused after Child Protective Services (CPS) had investigated him for abuse of his stepdaughter.

---

[5]Goff does not dispute that indecency with a child by sexual contact falls within the statutory list of "[s]exually violent offense[s]" required under Section 841.003(a)(1) of the SVP Act. *See* Tex. Health & Safety Code Ann. § 841.002(8)(A) (listing Penal Code Section 21.11(a)(1)—indecency with a child by contact—as a "[s]exually violent offense"); *see also* Tex. Penal Code Ann. § 21.11(a)(1).

[6]There is conflicting testimony as to when the abuse began for the youngest victim—Goff's stepdaughter—but the evidence shows that, at the earliest, the abuse began when she was "about four or five" years old. Additionally, for at least one of the children, Goff admitted that the abuse continued until she was thirteen years old.

Goff testified that he knew sexual contact with the children was wrong and that he was never attracted to the children[7]—only addicted to the feeling of being caught.[8] Despite his stating that he was not attracted to the children, he also testified that after each offensive interaction he was able to sexually gratify himself by thinking of the events that preceded it. These "preceding events" included Goff touching a child over and under her clothing; touching a child's breasts; telling a child to take off her clothing, then lying naked on top of her on his bed while rubbing his body on her; punishing a child while she was naked; and forcing[9] himself into two children's mouths, to the point that one of the children gagged and threw up on him. Further, when asked why he committed these offenses, Goff responded, "Because I wanted to," and "Because I could." Goff attempted to justify the abuse against the fourth child by testifying that he only wanted to "start a conversation with her" because he thought she was being abused by someone else.

---

[7]Goff contradicted these statements later in his testimony, admitting that he had been aroused by the children, but that he was not sure why he was.

[8]Goff testified that this "sense of excitement" provided an adrenaline rush that caused him to offend; however, he also admitted that he was not sure if it was the thought of getting caught or the "actual act" that caused the adrenaline rush.

[9]Goff objected to the characterization of his behavior as "forcing" the children to do anything, yet he conceded that he used his authority to coerce the children. He additionally admitted to manipulating people when it best served him and to using food to lure one of the children, telling her to open her mouth for a chip, but putting his penis in her mouth instead.

At the hearing, Goff testified that he is no longer attracted to children. His plan—if he were to find himself sexually aroused by a child upon his release—was to leave the situation and avoid being alone with children. Goff testified that he did not want to be near any children and that he would "only hug [his] own grandkids for the rest of their life." Goff was not able to describe concrete plans for treatment because he was not sure where he would be living if released, but he was able to identify several people as being part of his support system.

Goff testified that he does not have the same sexual urges that he had ten years ago and is a different person now. He stated that to avoid reoffending, he would be accountable for his own thoughts and would reach out to others if he found himself caught in the adrenaline rush again. When asked if he was at risk of reoffending again, Goff stated, "I believe there's no conscious way that I will ever offend again." When pressed about his use of the word "conscious" in his response, he explained that if he wanted to, he could choose not to follow these protocols he had set in place—and then admitted that he could also choose to offend again as well.

## C. Behavioral-Abnormality Evaluation

Forensic psychologist Dr. Jason Dunham conducted a behavioral-abnormality evaluation of Goff before the trial. To complete this evaluation, Dr. Dunham met with Goff for approximately two hours and reviewed Goff's initial evaluation for a behavioral abnormality, along with the court documents (including offense reports),

parole records, disciplinary records, medical records, deposition transcripts,[10] CPS records, victim statements, and police reports. Along with the information gained from the interview and Goff's records, Dr. Dunham also scored Goff on two psychological tests—the Psychopathy Checklist Revised (PCL-R) and the Static-99R. We discuss the results of each test in turn.

Dr. Dunham explained that the PCL-R is a measure of psychopathy, and that psychopathy is an elevation of antisocial personality. People who are psychopaths do not have concern for others and will act according to their own desires, regardless of what they believe is right. Dr. Dunham testified that Goff's score on the PCL-R was nineteen—the highest score on the test is forty—and concluded that the results indicate Goff is not a psychopath. The test identified that Goff has some psychopathic traits: "conning and manipulative behavior, lacking remorse or guilt, shallow affect, callous or lack of empathy, promiscuous sexual behavior, and having many short-term marital relationships."

The Static-99R is an actuarial instrument that uses historical and static data to determine a person's risk of reoffending. Goff's Static-99R score was two. According to Dr. Dunham, a score of two on this test indicates that Goff's risk of reoffending— as compared to other sex offenders—is average. But Dr. Dunham testified that, in his opinion, Goff's risk of reoffending is higher than the score of two implies.

---

[10]Goff was deposed approximately one month before trial.

8

Dr. Dunham identified two "umbrellas" of risk: sexual deviance and antisocial orientation. Sexual deviance is "abnormal sexual behavior that causes . . . [a] problem in society or within another person." Dr. Dunham characterized Goff's sexual offending history as sexually deviant and considered Goff a clinical sexual recidivist because he had been "semisanctioned" by CPS[11] but still reoffended. According to Dr. Dunham, the "vast majority" of sex offenders do not reoffend once they have been caught, confronted, detected, or suffered some sort of sanction. Dr. Dunham also testified that Goff's added risk factors include: offending against children while in a live-in—and sexually active—relationship with an adult, offending against children outside his family, using force and coercion against the children and threatening them not to tell anyone, abusing multiple children on more than one occasion, and failing to fully acknowledge the extent of his prior sexual offenses.

In addition to Goff's test results and risk factors, Dr. Dunham considered protective factors as well. Dr. Dunham explained that protective factors consider patterns of a person's behavior that might decrease their risk of reoffending in the future—including any consequence that resulted from prior offensive behaviors.

One of Goff's protective factors included his good behavior while being incarcerated. Dr. Dunham testified that when Goff is supervised and closely monitored,

---

[11]Dr. Dunham clarified the use of "semisanctioned," to include that Goff had been detected, arrested, jailed, and ordered to have no contact with his stepdaughter. And although the criminal charge was rejected by the prosecution at that time, Dr. Dunham considered these consequences to be a sanction of sorts, albeit not a legal sanction.

he does well. Another protective factor included Goff's age because he was within the age range where risk begins to decline. Additionally, Goff's last legally documented sexual offense was in 2014, but he was not investigated and arrested until 2017, providing a three-year period "in society" without another documented offense. However, Dr. Dunham observed that during his evaluation, he had discovered that other sexually deviant acts[12] may have occurred during this time, even if none of them resulted in legal consequences.

In addition to these protective factors, Dr. Dunham identified that Goff has a strong employment history, is legally a first-time sex offender, and does not have any male victims or victims who are strangers. When asked if Goff's support system was a protective factor, Dr. Dunham stated that it was positive but not a strong protective factor that could reduce Goff's risk of reoffending. Goff's support system was generally in place when the offenses occurred, and Dr. Dunham explained that he looks for what has changed—and whether that change could provide support to help reduce a person's risk of reoffending. Thus, because Goff's support system was relatively the same as the support he had while offending, Dr. Dunham did not consider this to be a protective factor.

---

[12]Dr. Dunham noted that Goff had shared that he made lewd comments about his stepdaughter and grabbed her breasts while they were still developing—because she would have been fifteen in 2017, Dr. Dunham estimated that this sexually deviant behavior occurred between 2014 and 2017. Also, according to Dr. Dunham, the fourth victim's fourteen-year-old sister had accused Goff of offering her money to show him her breasts around 2015.

Dr. Dunham diagnosed Goff with "pedophilic disorder," "[s]exually attracted to females and nonexclusive type." He described pedophilic disorder as having "sexual arousal and acting on that arousal toward prepubescent children"[13] and lasting for at least six months.[14] The "nonexclusive type" designation indicates that Goff is attracted to both prepubescent females and adult females. Dr. Dunham testified that pedophilic disorder is chronic and does not change with time. According to Dr. Dunham, pedophilia is a congenital or acquired condition that can be classified as a behavioral abnormality.

Thus, considering the test results, risk factors, and protective factors, Dr. Dunham concluded that Goff suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. According to Dr. Dunham, pedophilia is a clear example of sexual deviance, and Goff's lengthy history of sexual attraction to children and willingness to offend against them despite getting into trouble—and his failure to understand his behavior[15]—supported the likelihood that he would engage in a predatory act of sexual violence again if released.

---

[13]Dr. Dunham testified that prepubescent children are generally under thirteen and that the offender is more than five years older than the child. At the time of his first offense, Goff was thirty-one years old, and the child was eleven years old.

[14]Dr. Dunham testified that Goff's pattern of abuse spanned at least thirteen years.

[15]Dr. Dunham testified that Goff did not seem to understand why he offended in the first place—as Goff frequently denied that he was ever attracted to the girls,

11

## IV. Goff's Challenge

Goff's sole issue is that the evidence is insufficient to support the finding that at the time of trial he had a behavioral abnormality that made him likely to engage in predatory acts of sexual violence. Specifically, Goff complains that other than his prior convictions, "there is no evidence that [he] currently has a serious difficulty controlling his behavior or that he is presently predisposed to commit a sexually violent offense." Goff also argues that he is not a recidivist and that there was no evidence presented that his prior sentencing was not a sufficient deterrent to prevent future acts of sexual violence. We read each of these arguments as an attack on the jury's finding that Goff's behavioral abnormality—pedophilia—*makes him likely to engage in future predatory sexually violent acts*. Thus, Goff's legal challenge is to the likelihood of his future conduct, and he relies on his belief that he is "not a recidivist" to support this argument.

First, we find the recidivism argument to be unpersuasive. Goff sexually abused multiple children, multiple times, over a period of thirteen years—and possibly even longer, considering Dr. Dunham's testimony about Goff's suspected sexually deviant behaviors between 2014 and 2017. Goff also continued to sexually abuse children after being caught and given consequences by CPS. Thus, regardless of Goff's claims that he is not a recidivist, the evidence supports that his behavioral abnormality makes him likely to engage in predatory acts of sexual violence.

---

despite being able to masturbate right after the abuse—and thus could not effectively take steps to prevent engaging in sexual abuse.

12

Second, Dr. Dunham testified that pedophilia—a behavioral abnormality—is chronic and that Goff's attraction to children has not likely disappeared, despite Goff's claims otherwise. Additionally, the protective factors Dr. Dunham identified did not sway him to believe they were enough to reduce Goff's risk of reoffending—in fact, Dr. Dunham testified that Goff's risk to reoffend is high considering his prolonged pattern of sexual abuse and failure to recognize his sexual deviance and why he committed the offenses. Because Goff did not acknowledge or understand his sexual deviance, Dr. Dunham did not believe that Goff would be able to avoid future temptations. *See Lee*, 2024 WL 305838, at *1 (holding that the behavioral-abnormality prong requires proof of "a present condition that creates a likelihood of such conduct in the future" (quoting *Stoddard*, 619 S.W.3d at 677–78)); *Gibson*, 2024 WL 3897174, at *3. In support of Dr. Dunham's conclusion, the jury heard Goff repeatedly deny details of his sexual offenses, minimize his actions and behaviors, and change his answers when confronted with his deposition testimony.[16]

Moreover, the State was not required to wait for a post-prison relapse to show that Goff had difficulty controlling his behavior. *See Gibson*, 2024 WL 3897174, at *5. Rather, the jury could have relied on evidence of Goff's past behavior to infer that at the time of trial he had serious difficulties controlling his current behavior. *See Gonzalez*,

---

[16]For example, Goff claimed he was not attracted to or aroused by children, but then later he admitted that he was able to sexually gratify himself thinking about the child "being underneath [him]."

13

2022 WL 1183219, at *9; *In re Commitment of Lopez*, 462 S.W.3d 106, 116 (Tex. App.—Beaumont 2015, pet. denied) (holding jury could "infer [defendant's] current dangerousness from [expert] testimony, [defendant's] past behavior, and [defendant's] own testimony"). And although Goff responded well to close supervision while being incarcerated, Dr. Dunham expressed a concern with the lack of supervision if Goff were released, stating that the requirement to register as a sex offender would not be sufficient as a deterrent. After all, when Goff was given the opportunity to control his behavior following the CPS intervention, he continued to reoffend and behave inappropriately around children.

As the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony, we conclude that the evidence is legally sufficient to support the jury's verdict. *See Stoddard*, 619 S.W.3d at 674. We overrule Goff's sole issue on appeal.

## V. Conclusion

Having overruled Goff's sole issue, we affirm the trial court's civil-commitment judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: April 16, 2026

14